## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGANNE NATALE and CHELSEA CHENG, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>      v.<br><br>9199-4467 QUEBEC INC. d/b/a EARTH RATED,<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Meganne Natale and Chelsea Cheng ("Plaintiffs"), by and through their attorneys, makes the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendant 9199-4467 Quebec Inc. d/b/a Earth Rated ("Defendant").

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers of Defendant's product, Earth Rated Certified Compostable Poop Bags (the "Product"), in the United States.

2.      Defendant manufactures and sells a number of pet waste products under the "Earth Rated" label.  Defendant sells these products throughout the United States, including in the State of New York.

3.      Defendant holds itself out as an environmentally friendly brand.

4.      One of Defendant's products is the Earth Rated Certified Compostable Poop Bags.  The Product comes in three different sizes:  60 bags, 105 bags, and 225 bags.

5.      On the packaging the 60-count version of the Product, Defendant represents that the Product is "Certified Compostable":



6.      Likewise, on the packaging for the 105-count and 225-count versions of the Product—which is identical in all respects except for the size—Defendant represents that the Product is "Certified Compostable":

//

//

//



7.      Defendant makes similar claims on its website.  For instance, Defendant represents that the Product "meet[s] the ASTM D6400 standard for municipal composting as well as the EN13432 Home and Industrial standards for compostability":

> **What certifications do your compostable poop bags meet?**
>
> Our **certified compostable bags** meet the ASTM D6400 standard for municipal composting as well as the EN13432 Home and Industrial standards for compostability.

8.      Defendant further represents on its website that the Product is "certified for home composting" and are compostable at a "city compost" facility:

> **Can I put your compostable poop bags in my backyard compost?**
>
> Yes! These **bags** are certified for home composting. That said, we don't recommend using the soil to grow your dinner! If you keep your pile at an ambient temperature of 75 degrees F (24 degrees C), both the bag and your pup's poop will break down by approximately 90% in one year.

> **Can I put your compostable poop bags in my city compost?**
> Yes! Just be sure to check if your **city's municipal composting** accepts pet waste first, as not all facilities are equipped for it.

9.      In other words, on each version of the Product and on its website, Defendant represents that the Product is capable of being composted.  Reasonable consumers reviewing the Product's packaging would believe the same based on Defendant's representations.

10.     Problematically for consumers, these claims are false and misleading.  Indeed, the Federal Trade Commission ("FTC") has stated that "compostable" claims on dog waste products are "generally untrue."[1]

11.     As the FTC notes:

consumers generally think that unqualified "compostable claims" mean that a product will safely break down at the same rate as natural products, like leaves and grass clippings, in their home compost pile.  If marketers disclose that a product will only compost in commercial or municipal facilities, consumers think that those facilities are generally available in their area.  **However, dog waste is generally not safe to compost at home, and very few facilities accept this waste**.[2]

12.     More specifically, dog waste cannot be composted because it can contain harmful contaminants (*e.g.*, *E. Coli*).  Even in backyard composting, the U.S. Environmental Protection Agency cautions that dog waste can contain harmful parasites, bacteria, viruses, or pathogens.

13.     As environmental regulatory bodies have noted:

Animal waste contains two main types of pollutants that harm local waters: nutrients and pathogens.  When this waste ends up in water bodies, it decomposes, releasing nutrients that cause excessive growth of algae and

---

[1] *FTC Staff Warns Marketers and Sellers of Dog Waste Bags That Their Biodegradable and Compostable Claims May Be Deceptive*, Feb. 3, 2015, https://www.ftc.gov/news-events/press-releases/2015/02/ftc-staff-warns-marketers-sellers-dog-waste-bags-their.

[2] *Id.* (emphasis added).

weeds.  This makes the water murky, green, smelly, and even unusable for swimming, boating, or fishing.  The pathogens, disease-causing bacteria, and viruses can also make local waters unswimmable and unfishable, and have caused severe illness in humans.

As you can see, **animal waste doesn't simply decompose**.[3]

14.     On top of the foregoing, industrial composting of dog waste is **not available in the United States**.  Defendant even admits as much on a blog post on its website that is not linked in any way to the Product's page.[4]

> Please note that Industrial composting of pet waste is not currently available in the USA.

15.     The FTC has declared such practices to be deceptive.  16 C.F.R. § 260.7(a) ("It is deceptive to misrepresent, directly or by implication, that a product or package is compostable."). Per federal regulations, "[t]o avoid deception about the limited availability of municipal or institutional composting facilities, a marketer should clearly and prominently qualify compostable claims if such facilities are not available to a substantial majority of consumers or communities where the item is sold."  16 C.F.R. § 260.7(d).

16.     These federal regulations go on to give examples of deceptive conduct, including but not limited to the following:

**Example 2:**
A garden center sells grass clipping bags labeled as "Compostable in California Municipal Yard Trimmings Composting Facilities."  When the bags break down, however, they release toxins into the compost.  **The claim is deceptive if the presence of these toxins prevents the compost from being usable.**

…

---

[3] Do You Scoop The Poop?, https://cfpub.epa.gov/npstbx/files/Pet%20care%20fact%20sheet.pdf (emphasis added).

[4] 8 Ways to Celebrate Earth Day 2021 with Your Dog, https://earthrated.com/en/blog/8-ways-to-celebrate-earth-day-2021-with-your-dog/.

**Example 4:**
Nationally marketed lawn and leaf bags state "compostable" on each bag.  The bags also feature text disclosing that the bag is not designed for use in home compost piles.  Yard trimmings programs in many communities compost these bags, but such programs are not available to a substantial majority of consumers or communities where the bag is sold.  **The claim is deceptive because it likely conveys that composting facilities are available to a substantial majority of consumers or communities.**  To avoid deception, the marketer should clearly and prominently indicate the limited availability of such programs.

16 C.F.R. § 260.7(d) (emphasis added).

17.     These examples are analogous to the issue here with Defendant's Product, and illustrate why the "certified compostable" claim is deceptive.[5]  Like Example 2, the inability to compost dog waste due to the presence of parasites, bacteria, viruses, and pathogens prevents compost from being usable.  And like Example 4, facilities that can compost dog waste are not available to most (if not all) U.S. consumers, and Defendant does not clarify this on the Product's packaging.  Accordingly, the "certified compostable" claim is false and misleading because the Product is not capable of being composted.

//

//

//

//

//

//

//

//

---

[5] To be clear, Plaintiffs reference federal law in this Complaint not in any attempt to enforce it, but to demonstrate that their state-law claims do not impose any additional obligations on Defendant, beyond what is already required of them under federal law.

18.     On the back panel of the 60-count version of the Product, Defendant purportedly includes a small print disclaimer in small font:

 

19.     Defendant also includes a small print disclaimer on the side panel of the 60-count version of the Product:

//

//

//

//

//

//

7



20.     The back panel of the 105-count and 225-count versions of the Product also includes a small print disclaimer in small font:

//

//

//



Should only be disposed of in commercial composting facilities where pet waste is accepted. These facilities may not exist in your area. If you want to compost your pet waste in a home compost, please ensure to only use the resulting compost on non-food crops.

21.     No reasonable consumer would expect that small print language on the back and side panels of the Product would contain language inconsistent with the representation that the Product is capable of being composted.  Nor would a reasonable consumer expect that a "certified compostable" dog waste bag would not be capable of being composted.

22.     Further, even Defendant's disclaimers are misleading.  Right above the disclaimer on the back panel of the 60-count version of the Product, Defendant proclaims in large font that the Product is "Compostable in Industrial Facilities."  This is reinforced by language on Defendant's website that states consumers can "put [the] compostable poop bags in [a] city compost."  Defendant attempts to qualify this by saying that consumers should "[c]heck locally" because such facilities "do not exist in many communities."  But, in fact, such facilities do not exist *at all* in the United States.  The side panel disclaimer on the 60-count version of the Product is likewise deceptive because it gives the impression that there are commercial facilities that

accept pet waste, which is not true.  Moreover, the disclaimers are not "clearly and prominently indicate[d]," as the FTC requires.  16 C.F.R. § 260.7(d) (Example 4).

23.     The back panel disclaimer of the 60-count version of the Product also states that the Product is "[n]ot suitable for backyard composting."  But again, this is inconsistent with Defendant's website, which proclaims that a consumer can "put [the] compostable poop bags in [a] backyard compost."  Moreover, the disclaimer is not "clearly and prominently indicate[d]," as the FTC requires.  16 C.F.R. § 260.7(d) (Example 4).

24.     The back panel disclaimer of the 105-count and 225-count versions of the Product are no better.  Again, the back panel disclaimer of these versions of the Product states that users should only dispose of the Product "in commercial composting facilities where pet waste is accepted," and that "[t]hese facilities may not exist in your area."  But again, as Defendant admits on its website, such facilities do not exist *at all* in the United States.  Moreover, the disclaimers are not "clearly and prominently indicate[d]," as the FTC requires.  16 C.F.R. § 260.7(d) (Example 4).

25.     Accordingly, even Defendant's attempts to disclaim its misleading claims are themselves misleading and not consistently represented.

26.     The "certified compostable" claims are an example of "greenwashing." "Greenwashing is the process of conveying a false impression or providing misleading information about how a company's products are more environmentally sound … [C]ompanies engaged in greenwashing typically exaggerate their claims or the benefits in an attempt to mislead consumers."[6]

---

[6] GREENWASHING, INVESTOPEDIA, https://www.investopedia.com/terms/g/greenwashing.asp.

27.     Companies make greenwashing claims to "capitalize on the growing demand for environmentally sound products."[7]  For example, over the past five years, there has been a 71% rise in online searches for sustainable goods.[8]

28.     Further, according to a study by IBM and the National Retail Federation, nearly 70% of consumers in the United States and Canada think it is important that a brand is sustainable or eco-friendly.  The same study also found that 70% of respondents who valued sustainability would be willing to pay, on average, 35% more for eco-friendly brands.[9]

29.     In other words, modern consumers purchase products that claim to be environmentally friendly, and are even willing to pay more for such products over their non-sustainable competitors.

//

//

//

//

//

//

//

//

---

[7] *Id.*

[8] Cristianne Close, The global eco-wakening: how consumers are driving sustainability, World Economic Forum, May 18, 2021, https://www.weforum.org/agenda/2021/05/eco-wakening-consumers-driving-sustainability/.

[9] Dinara Bekmagambetova, Two-Thirds of North Americans Prefer Eco-Friendly Brands, Study Finds, Barron's, Jan. 10, 2020, https://www.barrons.com/articles/two-thirds-of-north-americans-prefer-eco-friendly-brands-study-finds-51578661728.

30.     Indeed, Defendant capitalizes on this market, and charges more for its dog waste bags that it claims are "certified compostable," as compared to those that lack such claims:

| Brand/Product | Quantity | Price | Price Per Bag[10] |
|---|---|---|---|
| Earth Rated Unscented Certified Compostable Bag[11] | 60 Certified Compostable Bags on 4 Refill Rolls | $8.99 | $0.15 |
| Earth Rated Unscented Bag[12] | 120 Bags on 8 Refill Rolls | $6.99 | $0.06 |

31.     In short, Defendant represents that the Product is "certified compostable" and charges a price premium for the Product based on this representation.  But that claim is false; dog waste is too dangerous to compost, and there are few – if any – facilities in the United States that compost dog waste.  Accordingly, the "certified compostable" claim is false and misleading because the Product is not capable of being composted, and consumers would not have purchased the Product—or paid substantially less for it—had they known the certified compostable claim was not true.

32.     Plaintiffs are purchasers of the Product who assert claims on behalf of themselves and similarly situated purchasers of the Product for (i) violation of New York General Business Law ("GBL") § 349, (ii) violation of GBL § 350, (iii) breach of express warranty, (iv) breach of implied warranty, (v) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, (vi) unjust enrichment, (vii) negligent misrepresentation, and (viii) fraud.

---

[10] Calculated by dividing the total price of the product by the number of bags in the package.

[11] https://earthrated.com/en/product/60-compostable-bags-on-4-rolls-unscented/.

[12] https://earthrated.com/en/product/120-poop-bags-on-refill-rolls-unscented/.

## PARTIES

33.     Plaintiff Meganne Natale is a resident of Kings County, New York who has an intent to remain there, and is therefore a domiciliary of New York.  In September 2021, Plaintiff Natale purchased a 60-count package of the Product from NYC Pet (a local pet store in her neighborhood), and paid $8.99 for the Product.  Prior to her purchase of her Product, Plaintiff Natale reviewed the product's labeling and packaging and saw that her Product was labeled and marketed as "certified compostable."  In purchasing the Product, Plaintiff Natale relied on Defendant's representations that the Product was "certified compostable."  Plaintiff Natale saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Product was "certified compostable."  Plaintiff Natale did not realize the back panel of the Product contained information inconsistent with this representation, nor did she have a reason to know the same.  Plaintiff Natale relied on these representations and warranties in deciding to purchase her Product.  Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased her Product on the same terms had she known those representations were not true.  In making her purchase, Plaintiff Natale paid an additional amount for the Product above what she would have paid for Defendant's non-certified compostable dog waste bags based on the Product's environmentally friendly claim.  Had Plaintiff Natale known that the "certified compostable" claim was false and misleading, Plaintiff Natale would not have purchased the Product, or would have paid substantially less for the Product.

34.     Plaintiff Chelsea Cheng is a resident of Nassau County, New York who has an intent to remain there, and is therefore a domiciliary of New York.  In August 2020, Plaintiff Cheng purchased a 225-count package of the Product from Amazon (through which Defendant

conducts significant business), and paid $17.99 for the Product. Prior to her purchase of her Product, Plaintiff Cheng reviewed the product's labeling and packaging and saw that her Product was labeled and marketed as "certified compostable." In purchasing the Product, Plaintiff Cheng relied on Defendant's representations that the Product was "certified compostable." Plaintiff Cheng saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Product was "certified compostable." Plaintiff Cheng did not realize the back panel of the Product contained information inconsistent with this representation, nor did she have a reason to know the same. Plaintiff Cheng relied on these representations and warranties in deciding to purchase her Product. Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased her Product on the same terms had she known those representations were not true. In making her purchase, Plaintiff Cheng paid an additional amount for the Product above what she would have paid for Defendant's non-certified compostable dog waste bags based on the Product's environmentally friendly claim. Had Plaintiff Cheng known that the "certified compostable" claim was false and misleading, Plaintiff Cheng would not have purchased the Product, or would have paid substantially less for the Product.

35.     Defendant 9199-4467 Quebec Inc. d/b/a Earth Rated is a Canadian corporation with its principal place of business at 1350 Mazurette, Suite 308, Montreal, Quebec H4N 1H2, Canada. Defendant markets, sells, and distributes the Product throughout the United States, including in the State of New York. Defendant manufactured, marketed, and sold the Product during the class period.

## JURISDICTION AND VENUE

36.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

37.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, such that Defendant has significant, continuous, and pervasive contracts with the State of New York.

38.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant transacts significant business within this District and because Plaintiffs purchased and used the Product in this District.

## CLASS ALLEGATIONS

39.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Product (the "Class").  Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Product for resale.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

40.     Plaintiffs also seek to represent a subclass consisting of Class members who purchased the Product in New York (the "Subclass").

41.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

42.   **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

43.   **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

(a)   whether Defendant's labeling, marketing, and promotion of the Product is false and misleading;

(b)   whether Defendant's conduct was unfair and/or deceptive; and

(c)   whether Plaintiffs and the Class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

44.   With respect to the Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated GBL §§ 349 and 350.

45.   **Typicality.**  The claims of the named Plaintiffs are typical of the claims of other members of the Class in that the named Plaintiffs was exposed to Defendant's false and misleading marketing, purchased the Product, and suffered a loss as a result of that purchase.

46.     **Adequacy of Representation.**  Plaintiffs are adequate representatives of the Class and Subclass because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass.

47.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
### Violation Of New York's Gen. Bus. Law § 349
### (On Behalf Of The New York Subclass)

48.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

49.     Plaintiffs bring this claim individually and on behalf of the members of the Subclass against Defendant.

50.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations regarding its Product.

51.     The foregoing deceptive acts and practices were directed at consumers.

52.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent that the Product is capable of being composted.

53.     Plaintiffs and members of the Subclass were injured as a result of Defendant's deceptive acts and practices because they would not have purchased the Product, or would have paid substantially less for it, if they had known that the Product was not capable of being composted.

54.     On behalf of themselves and other members of the Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

## COUNT II
### Violation Of New York's Gen. Bus. Law § 350
### (On Behalf Of The New York Subclass)

55.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

56.     Plaintiffs bring this claim individually and on behalf of the members of the Subclass against Defendant.

57.     Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting the qualities and characteristics of the Product.

58.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

59.     These misrepresentations have resulted in consumer injury or harm to the public interest.

60.     Defendant alone possessed the knowledge that the Product was not capable of being composted.

61.     As a result of Defendant's misrepresentations, Plaintiffs and members of the Subclass have suffered economic injury because they would not have purchased the Product, or would have paid substantially less for it, if they had known that the Product was not capable of being composted.

62.     On behalf of themselves and other members of the Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

## COUNT III
### Breach Of Express Warranty
### (On Behalf Of The Class And The New York Subclass)

63.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

64.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

65.     Defendant, as the designers, manufacturers, marketers, distributors, and/or sellers, expressly warranted that the Product was "certified compostable" and therefore capable of being composted.

66.     In fact, the Product is not fit for such purposes because the Product is not capable of being composted.

19

67.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class and Subclass members have been injured and harmed because they would not have purchased the Product, or would have paid substantially less for it, if they had known that the Product was not capable of being composted.

68.     On September 15, 2021, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiffs that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiffs' counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiffs' counsel's letter is attached hereto as **Exhibit 1**.

**COUNT IV**
**Breach of Implied Warranty**
**(On Behalf Of The Class And The New York Subclass)**

69.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

70.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

71.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Product, impliedly warranted that the Product was capable of being composted.

72.     Defendant breached the warranty implied in the contract for the sale of the defective Product because it could not pass without objection in the trade under the contract description, the Product was not of fair or average quality within the description, and the Product was unfit for its intended and ordinary purpose because the Product manufactured by Defendant was not capable of being composted.  As a result, Plaintiffs and Class and Subclass members did not receive the goods as impliedly warranted by Defendant to be merchantable.

73.     Plaintiffs and Class and Subclass members purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

74.     The Product was not altered by Plaintiffs or Class and Subclass members.

75.     The Product was defective when it left the exclusive control of Defendant.

76.     Defendant knew that the Product would be purchased and used without additional testing by Plaintiffs and Class and Subclass members.

77.     The Product was unfit for its intended purpose, and Plaintiffs and Class and Subclass members did not receive the goods as warranted.

78.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class and Subclass members have been injured and harmed because: (a) they would not have purchased the Product on the same terms if they knew that the Product was not capable of being composted; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

79.     On September 15, 2021, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiffs that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiffs' counsel sent Defendant a letter advising that Defendant breached an implied warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiffs' counsel's letter is attached hereto as **Exhibit 1**.

<u>**COUNT V**</u>
**Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.***
**(On Behalf Of The Class And The New York Subclass)**

80.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

81.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

82.     The Product is a consumer product as defined in 15 U.S.C. § 2301(1).

83.     Plaintiffs and the Class and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

84.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

85.     In connection with the marketing and sale of the Product, Defendant expressly and impliedly warranted that the Product was capable of being composted.  The Product was not capable of being composted as described in the allegations above.

86.     By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiffs and members of the Class and Subclass pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and members of the Class and Subclass.

87.     Plaintiffs and members of the Class and Subclass were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Product if they knew the Product was not capable of being composted, and the "certified compostable" claim was therefore false and misleading.

## COUNT VI
### Unjust Enrichment
### (On Behalf Of The Class And The New York Subclass)

88.     Plaintiffs incorporate by reference the allegations contained in all proceeding paragraphs of this complaint.

89.     Plaintiffs bring this claim individually and on behalf of members of the Class and Subclass against Defendant.

90.     Plaintiffs and Class and Subclass members conferred benefits on Defendant by purchasing the Product.

91.     Defendant has knowledge of such benefits.

92.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class and Subclass members' purchases of the Product.  Retention of moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Product was capable of being composted and charged a price premium based on those representations.

93.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class and Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class and Subclass members for their unjust enrichment, as ordered by the Court.

## COUNT VII
### Negligent Misrepresentation
### (On Behalf Of The Class And The New York Subclass)

94.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

95.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

96.     As discussed above, Defendant misrepresented that the Product was capable of being composted.

97.     At the time Defendant made these representations, Defendant knew or should have known that this representation was false or made it without knowledge of the representation's truth or veracity.

98.     At an absolute minimum, Defendant negligently misrepresented material facts about the Product.

99.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class and Subclass members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and Class and Subclass members to purchase the Product.

100.     Plaintiffs and Class and Subclass members would not have purchased the Product, or would have paid substantially less for it, if the true facts had been known.

101.     The negligent actions of Defendant caused damage to Plaintiffs and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VIII
### Fraud
### (On Behalf Of The Class And The New York Subclass)

102.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

103.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

104.     As discussed above, Defendant provided Plaintiffs and Class and Subclass members with false or misleading material information about the Product, including but not limited to the fact that the Product was capable of being composted.

105.     These misrepresentations were made with knowledge of their falsehood.

106.     The misrepresentations made by Defendant, upon which Plaintiffs and Class and Subclass members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and Class and Subclass members to purchase the Product.

107.     The fraudulent actions of Defendant caused damage to Plaintiffs and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek

judgment against Defendant, as follows:

(a)     For an order certifying the Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives of the Class and Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

(b)     For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiffs, the Class, and the Subclass on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest in all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h)     For an order awarding Plaintiffs and the Class and Subclass their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any

and all issues in this action so triable of right.

Dated: December 7, 2021                    Respectfully submitted,

                                           **BURSOR & FISHER, P.A.**

                                           By: */s/ Max S. Roberts*
                                                 Max S. Roberts

                                           Max S. Roberts
                                           888 Seventh Avenue

New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro hac vice* forthcoming)
Brittany S. Scott (*Pro hac vice* forthcoming)
1990 N. California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        bscott@bursor.com

*Attorneys for Plaintiffs*