## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MEGANNE NATALE and CHELSEA CHENG, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>9199-4467 QUEBEC INC., d/b/a EARTH RATED,<br><br>     Defendant. | Case No. 2:21-cv-6775-JS-SIL<br><br>Hon. Joanna Seybert |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

Dated: July 6, 2022

**BURSOR & FISHER, P.A.**
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:   (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice*)
Brittany S. Scott (*Pro Hac Vice*)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:   (925) 407-2700
Email:  ltfisher@bursor.com
    bscott@bursor.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

PAGE(S)

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 3

I.     PLAINTIFFS HAVE ALLEGED VIOLATIONS OF GBL §§ 349 AND 350 .................... 3

    A.    Whether A Reasonable Consumer Was Misled Is A Question Of Fact, Inappropriate For Resolution On A Motion To Dismiss ................................ 3

    B.    The Court Cannot Conclude As A Matter Of Law That A Reasonable Consumer Would Not Be Misled By The Product's Packaging ................................................................................................ 4

        1.    The Claim That The Product Is Compostable Is False ................................. 4

        2.    Under *Mantikas*, Defendant's Inconspicuous And Contradictory Disclaimers Cannot Cure Its Deceptive Advertising ...................................................................................... 7

    C.    Defendant Cannot Avoid Liability Under The GBL "Safe Harbor" Provision Because Defendant Has Not Complied With The FTC Green Guides ................................................................................... 13

II.    PLAINTIFFS HAVE ARTICLE III STANDING TO BRING THEIR CLAIMS ............. 14

III.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THEIR WARRANTY CLAIMS ...... 17

    A.    Plaintiffs Plausibly Allege A Breach of Express Warranty Claim .......................... 17

    B.    Plaintiffs Plausibly Allege Violations Of The Magnuson-Moss Warranty Act ................................................................................... 20

IV.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THEIR FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS UNDER FED. R. CIV. P 9(B) ................................ 21

    A.    Plaintiffs Have Sufficiently Stated A Claim For Fraud ........................................... 21

    B.    Plaintiffs Have Sufficiently Stated A Claim For Negligent Misrepresentation ................................................................................ 23

CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Bardsley v. Nonni's Foods LLC*,
  2022 WL 814034 (S.D.N.Y. Mar. 16, 2022) ............................................................. 13

*Beardsall v. CVS Pharmacy, Inc.*,
  953 F.3d 969 (7th Cir. 2020) ...................................................................................... 9

*Belfiore v. Procter & Gamble Co.*,
  94 F. Supp. 3d 440 (E.D.N.Y. 2015) ........................................................................ 15

*Brady v. Basic Research, LLC.*,
  101 F.Supp.3d 217 (E.D.N.Y. 2015) ........................................................................ 21

*Colpitts v. Blue Diamond Growers*,
  527 F. Supp. 3d 562  (S.D.N.Y. 2021) ..................................................................... 15

*Downing v. Keurig Green Mountain, Inc.*,
  2021 WL 2403811 (D. Mass. June 11, 2021) .................................................... passim

*Dumont v. Reily Food Co.*,
  934 F.3d 35 (1st Cir. 2019) ......................................................................................... 9

*Ebin v. Kangadis*,
  2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) .................................................... 18, 22

*Engram v. GSK Consumer Healthcare Holdings (US) Inc.*,
  2021 WL 4502439 (E.D.N.Y. Sept. 30, 2021) .................................................. 11, 12

*Fishon v. Peloton Interactive, Inc.*,
  2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020) ............................................................... 9

*Geffner v. Coca-Cola Co.*,
  343 F. Supp. 3d 246 (S.D.N.Y. 2018) ...................................................................... 13

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ............................................................... 3, 17, 18

*Gonzalez v. Costco Wholesale Corp.*,
  2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018) ......................................................... 15

*Greene v. Gerber Prod. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ................................................................. 23, 24

*Grossman v. Simply Nourish Pet Food Co.*,
  516 F. Supp. 3d 261 (E.D.N.Y. 2021) ................................................................. 8, 18

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ...................................................... 23, 24, 25

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
   2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ..................................................... 3, 13

*Jovel v. i-Health, Inc.*,
   2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) ......................................................... 22

*Kurtz v. Kimberly Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................................ 15

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) .......................................................................................... 25

*LaFaro v. New York Cardiothoracic Group, PLLC*,
   570 F.3d 471 (2d Cir. 2009) .................................................................................... 6

*Locklin v. StriVectin Operating Co.*,
   2022 WL 867248 (N.D. Cal. Mar. 23, 2022) ......................................................... 2, 9

*Lugones v. Pete & Gerry's Organic, LLC*,
   440 F. Supp. 3d 226 (S.D.N.Y. 2020) ...................................................................... 3

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018) ........................................................................... passim

*Mason v. Reed's Inc.*,
   515 F. Supp. 3d 135 (S.D.N.Y. 2021) .................................................................... 18

*Mogull v. Pete and Garry's Organics, LLC*,
   --- F. Supp. 3d ---, 2022 WL 602971 (S.D.N.Y. Feb. 28, 2022) ...................... passim

*Nelson v. MillerCoors, LLC*,
   246 F. Supp. 3d 666 (E.D.N.Y. 2017) .................................................................... 11

*Patellos v. Hello Prod., LLC*,
   523 F. Supp. 3d 523 (S.D.N.Y. 2021) .................................................................... 22

*Paulino v. Conopco, Inc.*,
   2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ........................................................ 17

*Porter v. NBTY, Inc.*,
   2019 WL 5694312 (N.D. Ill. Nov. 4, 2019) ........................................................... 13

*Rel. Polansky v. Pfizer, Inc.*,
   2009 WL 145682 (E.D.N.Y. May 22, 2009) ........................................................... 22

*Rossi v. Gem Nation Corp.*,
   2021 WL 7906550 (E.D.N.Y. July 27, 2021) .................................................... 21, 24

*Sec. Exchange Commission v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*,
    296 F.R.D. 241 (S.D.N.Y. 2013) ....................................................................... 25

*Sharpe v. A&W Concentrate Co.*,
    481 F. Supp. 3d 94 (E.D.N.Y. 2020) ................................................................. 9

*Sitt v. Nature's Bounty, Inc.*,
    2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ................................................. 20

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................................. 9

## STATUTES

N.Y. U.C.C. § 2-313(1)(a) ....................................................................................... 18

N.Y. U.C.C. § 2-313(2) ........................................................................................... 18

## RULES

Fed. R. Civ. P. 9(b) ..................................................................................... i, 21, 25

## REGULATIONS

16 C.F.R. § 260.2 ................................................................................................... 16

16 C.F.R. § 260.7 ............................................................................................. 5, 13

16 C.F.R. § 260.7(a) .......................................................................................... 9, 17

16 C.F.R. § 260.7(c) .......................................................................................... 9, 17

16 C.F.R. § 260.7(d) ..................................................................................... 9, 13, 17

## <u>INTRODUCTION</u>

This is a simple case.  Numerous environmental agencies have found that dog waste is not compostable "because it can contain harmful contaminants" like *E. Coli*, as well as other "harmful parasites, bacteria, viruses, or pathogens."  First Amended Complaint (ECF No. 20) ("FAC"), at ¶ 12; *see also id.* ¶ 13 ("[A]nimal waste doesn't simply decompose.") (emphasis removed).  Because of the harmful viruses released by dog waste, "dog waste is generally not safe to compost at home."  *Id.* ¶ 11 (emphasis removed).  And while special facilities that can compost dog waste exist in other countries like Canada, such facilities do not exist *at all* in the United States.  *Id.* ¶ 14.  For these reasons, the Federal Trade Commission ("FTC") has noted that "compostable" claims on dog waste products are "generally untrue."  *Id.* ¶¶ 10-11.[1]

Defendant is no exception to this general rule.  Defendant sells "Earth Rated Certified Compostable Poop Bags" (the "Product"), which come in "three different sizes: 60 bags, 105 bags, and 225 bags."  *Id.* ¶ 4.  On the front of the packaging on each variant of the Product, Defendant claims that the Product is "Certified Compostable."  *Id.* ¶¶ 5-6.  Not only do Plaintiffs allege they and other consumers relied on this claim in deciding to purchase the Product (*id.* ¶¶ 36, 38-39), Plaintiffs allege Defendant charges more for the Product based on the claim that the Product is capable of being composted.  *Id.* ¶ 35.  But, as noted above, the claim that the Product is capable of being composted is false because (i) the Product is not safe for backyard composting, and (ii) there are no facilities in the United States that can compost dog waste.  *Id.*

---

[1] Defendant states "Plaintiffs do not allege that Earth Rated was one of the companies the FTC 'warned,' and the press release itself does not identify Earth Rated as an offender."  MTD at 6. Defendant ignores the FTC's statement that "marketers who did not receive a letter *should not assume that their claims are fine.*"  *See* Press Release, Federal Trade Commission, FTC Staff Warns Marketers and Sellers of Dog Waste Bags That Their Biodegradable and Compostable Claims May Be Deceptive (Feb. 3, 2015), https://www.ftc.gov/news-events/news/press-releases/2015/02/ftc-staff-warns-marketers-sellers-dog-waste-bags-their-biodegradable-compostable-claims-may-be (emphasis added).

¶¶ 10-18.  And, although Defendant attempts to disclaim its front-label claim with inconspicuous disclaimers on the back and side of the Product, those disclaimers only add to the deception rather than cure it.[2]  For instance, Defendant claims on the back of the Product that consumers should "check locally" for facilities that compost dog waste, but then admits on its website that such facilities do not exist anywhere in the United States.  *Id.* ¶¶ 14, 18-19.[3]  And Defendant claims on its website and the back of the 225-count version of the Product that consumers can compost the Product in their backyard but should not use the compost for food, but then states on the back of the 60-count version of the Product that the Product is "not suitable for backyard composting."  *Id.* ¶¶ 8, 18, 20.  Thus, Defendant makes several different statements in several different places, all of which contradict the consumer-facing claim that the Product is capable of being composted.  *Id.* ¶¶ 21-30.

To put it simply, this is a case about a company "say[ing] something misleading on the front of a label and [attempting to] escape liability by stating 'that's not actually what we mean' in fine print on the back."  *Locklin v. StriVectin Operating Co.*, 2022 WL 867248, at *3 (N.D. Cal. Mar. 23, 2022).  The Second Circuit has held that such conduct gives rise to claims for fraud and deceptive practices, as have courts in other circuits.  *Mantikas v. Kellogg Co*., 910 F.3d 633 (2d Cir. 2018); *Downing v. Keurig Green Mountain, Inc.*, 2021 WL 2403811 (D. Mass. June 11, 2021).  This Court should be no exception, and Defendant's Motion should be denied in full.

---

[2] Defendant contends its website also contains clarifying language, but the Product's packaging never expressly directs consumers to Defendant's website.  FAC ¶¶ 5-6, 18-20.  In any event, the website contains a number of conflicting statements as well, which undermine the "Certified Compostable" claim.

[3] Defendant cites to anther blog post in its Motion, which claims that industrial composting facilities in the United States are not "widely available," as opposed to not available at all.  MTD at 7 (citing https://earthrated.com/en/blog/how-and-where-to-compost-dog-poop/).  Notably, this blog post points to locations in Canada where composting is possible but does not do the same for the United States.  Further, it is not clear why the Court should believe this statement—which was written on February 6—but not Defendant's statement in the blog post referenced in the FAC—which was written on March 29 (*i.e.*, *after* the blog post referenced in the Motion).

**ARGUMENT**

**I.**    **PLAINTIFFS HAVE ALLEGED VIOLATIONS OF GBL §§ 349 AND 350**

Defendant argues Plaintiffs fail to allege violations of GBL §§ 349 and 350 because (i) Defendant complied with the FTC's Green Guides, which is a "complete defense" under the "safe harbor" provisions of GBL §§ 349 and 350, and (ii) that "no reasonable consumer would be misled by the Product's advertising."  MTD at 16-19.  These arguments fail.

**A.**    **Whether A Reasonable Consumer Was Misled Is A Question Of Fact, Inappropriate For Resolution On A Motion To Dismiss**

Defendant asks the Court to find, as a matter of law, that no reasonable consumer would be misled by the Product's advertising because the "Certified Compostable" claim is true and "[b]ecause the disclaimers on the Product packaging as well as Earth Rated's website are clear, prominent and unambiguous."  MTD at 19.  But it is well-settled under New York law that "[t]he question whether a reasonable consumer would likely be deceived … is a factual dispute" that is "generally not resolved on a motion to dismiss."  *See*, *e.g.*, *In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013) (internal citations omitted)*; Lugones v. Pete & Gerry's Organic*, LLC, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020) ("[T]his Court cannot conclude as a matter of law that a significant portion of the general consuming public would not read Defendant's claims about its hens having plenty of green space to peck, perch, and play in — together with its verdant images and slogans of 'OUTDOOR FORAGE' — and not believe that Defendant's hens have significant access to the outdoors."); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478-80 (S.D.N.Y. 2014) ("[T]he Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer").  Thus, the Court should refrain from determining whether a reasonable consumer would be misled by Defendant's unqualified "Certified Compostable" claim until after discovery has occurred.

3

**B.      The Court Cannot Conclude As A Matter Of Law That A Reasonable Consumer Would Not Be Misled By The Product's Packaging**

To the extent the Court addresses the "reasonable consumer" inquiry at this stage—and it should not—the Court cannot conclude as a matter of law that a reasonable consumer would not be misled by the Product's packaging.   The "Certified Compostable" claim is false, and Defendant's contradictory disclaimers do not (and cannot as a matter of law) cure that deception.

*1.      The Claim That The Product Is Compostable Is False*

*First*, Defendant contends the claim is not misleading because the Product "meet[s] the ASTM D6400 and EN13432 Standards for compostability."   MTD at 13.   As an initial matter, Defendant only discloses this fact on its website, and neither Plaintiff purchased the Product on Defendant's website.   FAC ¶¶ 38-39.   By contrast, there is not a single representation on Defendant's packaging—not even in Defendant's inconspicuous disclaimers, addressed at Argument § I.B., *infra*—that tells consumers that "Certified Compostable" means the Product meets some obscure industrial standard, nor refers consumers to this standard on Defendant's website.   FAC ¶¶ 5-6, 18-20.   Therefore, Defendant cannot argue a reasonable consumer would understand "Certified Compostable" to mean the Product meets some industrial standard because Defendant itself does not indicate that is what it meant by "Certified Compostable."

Even if Defendant intended the "Certified Compostable" claim to only mean that the Product met certain industrial standards, that would not render the claim non-deceptive.   *Mogull v. Pete and Garry's Organics, LLC*, --- F. Supp. 3d ---, 2022 WL 602971 (S.D.N.Y. Feb. 28, 2022) is instructive.   In *Mogull*, the plaintiff challenged the defendant's claim that its farm eggs were from "free-range" hens, despite the hens being packed into "henhouses 20,000 at a time, many of which are unable to ever access outside space."   *Id.*, at *4.   There, like here, the defendant argued that "the challenged statements [were] true because its farming practices [met] the 'Certified Humane Free-Range' qualifications" and were therefore not deceptive.   *Id.*, at *3.

4

The court rejected defendant's argument, finding "it is plausible a reasonable consumer would not understand 'free-range eggs' to convey that [defendant's] eggs meet the 'Certified Humane' standard." *Id*. Specifically, the *Mogull* court focused on the fact that "'free-range' is displayed as a standalone phrase throughout defendant's packaging, and only appears once directly adjacent to 'Certified Humane.'" *Id*.

The same is true here. Defendant states, in large font on the front of the Product's packaging, that the Product is "Certified Compostable." FAC ¶¶ 5-6. Nowhere in or around that claim, or anywhere on the consumer-facing side of the package, is there any link between that claim and any sort of industrial standard. *Id.* ¶¶ 5-6, 18-20. Indeed, the industrial standards Defendant claims the Product meets are never mentioned anywhere on the Product's packaging. And even on Defendant's website, "the phrase ['Certified Compostable'] is stated throughout separately from the [industrial standards]." *Mogull*, 2022 WL 602971, at *3; *see also* FAC ¶¶ 7-8, 25, 27. Thus, whether the Product meets various industrial standards does not make the claim non-deceptive.

Further, it does not matter whether the Product meets these standards. As Plaintiffs allege, and as the FTC has noted, "compostable" claims on dog waste products are "generally untrue because "animal waste doesn't simply decompose" and "is generally not safe to compost at home." FAC ¶¶ 10-13. In other words, it *may* be true that the Product can be composted if a consumer attempts to do so without putting any dog waste in it. But when a consumer uses the Product to pick up and discard dog waste—*i.e.*, the entire point of the Product—the Product is not capable of being composted due to the toxins released by dog waste. FAC ¶¶ 11-13. Thus, the claim is false because the toxins released by the dog waste "prevent the compost from being usable." 16 C.F.R. § 260.7 (Example 2); *see also id.* § 260.7(b) ("A marketer claiming that an item is compostable should have competent and reliable scientific evidence that *all the materials*

*in the item* will break down into, or otherwise become part of, *usable* compost") (emphasis added).

*Second*, Defendant contends that because the Product can allegedly be composted in certain industrial facilities or non-food backyard compost, the claim is true because "[t]he Product is still capable of being composted even if it cannot be composted in exactly the way Plaintiffs desire."  MTD at 18.  As an initial matter, Plaintiffs have alleged the Product is not capable of being composted *at all*, and these allegations must be taken as true at this stage. *LaFaro v. New York Cardiothoracic Group*, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) ("On a motion to dismiss … we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.").  Defendant states in a blog on its website that industrial composting of dog waste is not available in the United States, meaning there is nowhere Plaintiffs could bring their Product to compost it.  FAC ¶ 14.  And although Defendant claims on its website and some packaging that the Product can be composted in the backyard for non-food purposes, Defendant says elsewhere that the Product is "not suitable for backyard composting."  FAC ¶ 18.  The latter is supported by the findings of environmental agencies like the EPA, which notes "dog waste can contain harmful parasites, bacteria, viruses, or pathogens." FAC ¶ 12.

Further, to the extent "Certified Compostable" refers to where or how the Product can allegedly be composted, that also does not make the claim true.  *Downing v. Keurig Green Mountain, Inc.*, 2021 WL 2403811 (D. Mass. June 11, 2021) is instructive.  In that case, coffee pods "featured a three-arrow recycling symbol and the catch phrase 'Peel, Empty, Recycle,' although the word 'Recycle' was followed by an asterisk that advised buyers to 'Check Locally.'"  *Id.*, at *1.  However, "many recycling centers could not accept the Pods as a recyclable product."  *Id*.  The court held the defendant's representations were deceptive:

> Where Downing alleges that most recycling centers do not accept Pods and only 30% of Keurig's Pods were recyclable at the facilities that accepted them, and Keurig's statement to "check locally" may not be sufficient to avoid deceptive marketing under the example to the FTC regulation, Downing has plausibly alleged that misled Keurig consumers.

*Id.* at *6; *see also id.* ("[R]easonable customers viewing the Keurig's claims that the Pods were recyclable were not expected to do research to see if the Pods were actually recyclable, either in their own communities or across the United States.  The warning 'check locally' did not make those customers unreasonable in assuming the Pods were recyclable.").

The Court should reach the same result here.  Plaintiffs have alleged that Defendant's Product cannot be composted at any facility in the United States and cannot be composted in a consumer's backyard, and Defendant's admonition to consumers to "check locally" or use certain types of backyard composting does not render the claim true.  FAC ¶¶ 5-17; *see also* Argument § I.B., *infra*.  Indeed, unlike the claim in *Downing*, there is not even an asterisk next to the claim here to direct consumers to any disclaimers concerning where the Product can be composted, which makes the claim here *more* deceptive than in *Downing*.

In sum, Plaintiffs have sufficiently alleged the "Certified Compostable" claim is false.

### 2. Under Mantikas, Defendant's Inconspicuous And Contradictory Disclaimers Cannot Cure Its Deceptive Advertising

Defendant asserts that even if its "Certified Compostable" claim is false (which it is), it sufficiently qualified that claim with "clear and prominent disclaimer[s]."  MTD at 15.  Defendant also claims that "courts have routinely disagreed with Plaintiffs' contention that a reasonable consumer can rely on text on the front of a package to support their claims but should not be expected to flip the package around and notice the disclaimer."  MTD at 18.  Defendant's argument is not just wrong, it runs headfirst into and is entirely foreclosed by the Second Circuit's controlling decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018).

In *Mantikas,* the plaintiffs alleged the defendant's "made with whole grain" labeling was deceptive because the side paneling of the box indicated that the primary ingredient was "enriched white flour," contrary to the whole grain claim.  *Mantikas*, 910 F.3d at 634.  The defendant argued that "a reasonable consumer would not be deceived by the 'whole grain' claims, because the side panel of the packaging [disclosed] further detail about the product's ingredients."  *Id.* at 637.  The Second Circuit disagreed with the defendant:

> [W]e cannot conclude that these disclosures on the side of the box render Plaintiffs' allegations of deception implausible.  *Reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.  Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging*.  We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box. Plaintiffs plausibly allege that the Nutrition Facts panel and ingredients list on whole grain Cheez-Its—which reveals that enriched white flour is the predominant ingredient—contradict, rather than confirm, Defendant's "whole grain" representations on the front of the box.

*Id.* at 637 (emphasis added, cleaned up, internal citations omitted).  In other words, *Mantikas* mandates that disclaimers *confirm* information on the front of a package, *not* contradict it.  And under *Mantikas*, if a disclaimer contradicts a claim on the front label, a court cannot conclude that a label is not deceptive as a matter of law.

Since *Mantikas*, courts in this Circuit have consistently allowed claims under GBL §§ 349 and 350 to go forward where a company makes a claim on the front of its packaging but includes a contradictory disclaimer elsewhere on the packaging.  *See*, *e.g.*, *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 281 (E.D.N.Y. 2021) ("[D]efendants' contention that the 'qualified statement' on the Products' label prevents any consumer misconception is also unpersuasive."); *Mogull*, 2022 WL 602971, at *3 ("Nellie's argues the challenged statements are true because its farming practices meet the 'Certified Humane Free-Range' qualifications.

8

However, 'free-range' is displayed as a standalone phrase throughout defendant's packaging, and only appears once directly adjacent to 'Certified Humane' … Accordingly, it is plausible a reasonable consumer would not understand 'free-range eggs' to convey that Nellie's eggs meet the 'Certified Humane' standard."); *Fishon v. Peloton Interactive, Inc.*, 2020 WL 6564755, at *4 (S.D.N.Y. Nov. 9, 2020) ("A reasonable consumer, having viewed Peloton's advertisements on its website and having decided to purchase a Peloton product based on the understanding that the library would grow should not be expected to discover the truth and that such understanding was false from the Terms of Service.") (internal quotations omitted); *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 103 (E.D.N.Y. 2020) ("[T]he Court in *Mantikas* emphasized that a consumer should not be expected to turn and consult the side of a box to correct misleading information set forth in large bold type on the front of the box.").

Likewise, courts across the country consistently hold that "a company can't say something misleading on the front of a label and escape liability by stating 'that's not actually what we mean' in fine print on the back." *Locklin v. StriVectin Operating Co.*, 2022 WL 867248, at *3 (N.D. Cal. Mar. 23, 2022); *see also*, *e.g.*, *Downing*, 2021 WL 2403811, at *6; *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree that … reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 978 (7th Cir. 2020); *Dumont v. Reily Food Co.*, 934 F.3d 35, 37-38 (1st Cir. 2019). Moreover, these courts' decisions are consistent with the FTC Green Guides, which require that "certified compostable" claims be "clearly and prominently qualif[ied]." 16 C.F.R. §§ 260.7(c)-(d).

As should be evident from *Mantikas* and this great weight of authority, the Product's labeling is deceptive. On the front label of the Product and without any qualification, Defendant

9

claims its Product is "Certified Compostable."  FAC ¶¶ 5-6.  This claim is not true.  Argument § I.B.1, *supra*.  And, rather than confirm the front-label claim, as *Mantikas* requires, the Product's disclaimers contradict it.  The disclaimers on the back and side of the packaging state that the Product is only compostable in certain "commercial composting facilities where pet waste is accepted," which "do not exist in many communities."  FAC ¶¶ 18-20.  And as to backyard composting, the 60-count version of the Product states the Product is "[n]ot suitable for backyard composting," while the 225-count version states that the backyard compost should be used only on "non-food crops."  *Id*.

On these facts alone, Defendant's labeling would be deceptive because it's back and side-panel disclaimers contradict its unqualified, front-label claim that the Product is capable of being composted.  *Mantikas*, 910 F.3d at 637; *Downing*, 2021 WL 2403811, at *6.  But Defendant's deception goes even further.  As to industrial composting, on the back of the 60-count version of the Product, Defendant claims the Product is "compostable in industrial facilities," right above the disclaimer that such facilities don't exist in many areas.  FAC ¶ 18.  But then, on a separate blog post on Defendant's website, Defendant states "[i]ndustrial composting of pet waste is not currently available in the USA."  *Id.* ¶ 14.  And now, in its Motion, Defendant points to yet another, earlier blog post in which Defendant states "industrial composting of pet waste is not widely available in the USA."  MTD at 7.

In other words, Defendant is saying *four different things* in *four different places*: (i) on the front label, it is saying the Product is "Certified Compostable" without qualification (*i.e.*, that *all* consumers can compost the Product); (ii) on the back and side labels, it is saying that *some* consumers cannot compost the Product due to a lack of facilities in their area; (iii) on one blog, it saying *most* consumers cannot compost the Product because such facilities are not "widely

available," and (iv) in yet another blog, it is saying *no* consumers can compost the Product because such facilities do not exist at all in the United States.

The same is true for backyard composting: Defendant is telling consumers (i) on the front label that the Product is "Certified Compostable," (ii) on the back label of the 225-count version and the product page of its website that the compost should not be used for food, and (iii) on the side label of the 60-count version that the Product is not suitable for backyard composting *at all*. FAC ¶¶ 8, 18, 20.  It is not possible—certainly not as a matter of law—that a reasonable consumer would not be misled by the Product's advertising, given that Defendant is making one bold, unqualified (and false) claim on the front of the Product, and then making several conflicting statements in several different places that all contradict the claim that the Product is capable of being composted.

In support of its argument to the contrary, Defendant cites a mere two cases.  The first, *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017), predates *Mantikas* and so has been overruled to the extent it is inconsistent with *Mantikas*.  Notwithstanding this, the problem with *Nelson*, as Defendant's other cited authority makes clear, is that "the front of the package [was] better characterized as ambiguous than misleading."  *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, 2021 WL 4502439, at *3 (E.D.N.Y. Sept. 30, 2021) (citing *Nelson*, 246 F. Supp. 3d at 674).  In *Nelson*, the "claim" was ambiguous because there was no specific claim, such as "Made in Australia."  Rather, there were "multiple references to Australian culture and symbols, namely an image of a Red Kangaroo, the national symbol of Australia, and the Southern Cross constellation, which is a main component on the Australian national flag."  *Nelson*, 246 F. Supp. 3d at 670 (internal quotations omitted).  Thus, because there was no specific claim, the court could "look[] at the alleged misrepresentations in their full context" (*i.e.*, including the disclaimers) to clarify the front label.  *Engram*, 2021 WL 4502439,

at \*3; *see also id.*, at \*4 ("[C]ontext was sufficient to overcome some identified *ambiguity*—as opposed to outright falsehood—on the front of the package.") (emphasis in original).  But where, as here, "the front of a package makes a bold and blatant misstatement about a key element of a product, there is little chance that clarification or context on the reverse of the package will suffice to overcome a deception claim (especially at the motion-to-dismiss stage)." *Id.*, at \*3; *see also id.*, at \*4 ("I read *Mantikas* … to say that contextual information on the reverse of a product's packaging cannot overcome bold and blatant misstatements on the front."). Accordingly, to the extent *Nelson* has not been overruled, it is not relevant.

The holding in *Engram* also does not help Defendant.  In that case, the court found that the product made two separate claims: that it provided "8 Hour Moisture" and was "SPF 15." *Engram*, 2021 WL 4502439, at \*1.  The plaintiff, however, argued that the claims, "taken together []provide the misleading impression that the product provides eight hours of sun protection." *Id.*, at \*5.  But the court found that allegation to be "inconsistent with the face of the package, and with common sense" because "[t]he package makes no durational claim about the SPF protection on the front of the package at all." *Id.*  Indeed, a cursory look at the labeling in *Engram* shows the claims were on different lines and were thus clearly distinct. *Id.*, at \*1.  That is not the case here.  Defendant's only claims the Product is "Certified Compostable" (FAC ¶¶ 5-6), and there is no second claim that Plaintiffs are attempting to mesh together to allege deception.  Therefore, *Engram* lends no support to Defendant's position.

In sum, the Court cannot conclude as a matter of law that a reasonable consumer would not be deceived by the Product's packaging.  Defendant's "disclaimers" do not cure its deceptive practices and concluding otherwise would be reversible error under *Mantikas*.

**C.  Defendant Cannot Avoid Liability Under The GBL "Safe Harbor" Provision Because Defendant Has Not Complied With The FTC Green Guides**

Defendant argues that it "has provided appropriate disclaimers in compliance with 16 C.F.R. § 260.7, and as such, can take advantage of the 'complete defense' provided in Sections 349 and 350." MTD at 17. As should be clear from the aforementioned discussion, that cannot be further from the truth.

GBL §§ 349 and 350 provide that "it shall be a complete defense that the [advertisement] is … subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission [sic] or any official department, division, commission or agency of the United States." However, where "the challenged conduct is not permitted by applicable laws and regulations, the safe harbor provisions under … New York law do not apply." *Porter v. NBTY, Inc.*, 2019 WL 5694312, at *4 (N.D. Ill. Nov. 4, 2019); *see also Bardsley v. Nonni's Foods LLC*, 2022 WL 814034, at *12 (S.D.N.Y. Mar. 16, 2022) (declining to dismiss claims where "Plaintiff sufficiently alleges that Product's packaging fails to comply with the applicable federal requirements under the FDCA and its implementing regulations."); *In re Frito-Lay N. Am., Inc. All Nat. Litig.,* 2013 WL 4647512, at *22 (declining to dismiss claims where it was not "clear that Frito–Lay's labeling "complies with" the FDA's guidance."); *Geffner v. Coca-Cola Co.*, 343 F. Supp. 3d 246, 252 (S.D.N.Y. 2018) ("[T]he FDCA does not authorize use of the term 'diet' if it is used in a false or misleading manner. Accordingly, the safe harbor defense fails.").

To support its defense, Defendant relies on the FTC Green Guides. Specifically, the Green Guides state that "a marketer should *clearly* and *prominently* qualify compostable claims if such facilities are not available to a substantial majority of consumers or communities where the item is sold." 16 C.F.R. § 260.7(d) (emphasis added). As is clear from the prior discussion, Defendant's marketing does not comply with this requirement. Argument § I.B.2, *supra*.

13

Plaintiffs allege that Defendant prominently and without qualification claims that its product is "Certified Compostable" on the front of its packaging. FAC ¶¶ 5-6. Defendant then contradicts this claim with disclaimers on the back and side of the packaging, which consumers are in no way directed towards. FAC ¶¶ 18-20. And even those disclaimers are inaccurate, as they contradict each other or are contradicted by statements on Defendant's website. *See*, *e.g.*, FAC ¶ 14 (stating "industrial composting of dog waste is not available in the United States," despite inconspicuous disclaimer advising consumers to "check locally"); *see also id.* ¶¶ 19-20 (inconspicuous disclaimer on 60-count version of the Product telling consumers that product is "not suitable for backyard composting," compared with inconspicuous disclaimer on 225-count version of the Product telling consumers that backyard compost should only be used for "non-food crops").

Such inconsistent and contradictory statements do not comply with the Green Guides, and they do not comply with the law of the Second Circuit. *Mantikas*, 910 F.3d at 637 ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from … small print on the side of the box."); *see also Downing*, 2021 WL 2403811, at *6 ("[R]easonable customers viewing the Keurig's claims that the Pods were recyclable were not expected to do research to see if the Pods were actually recyclable, either in their own communities or across the United States. The warning 'check locally' did not make those customers unreasonable in assuming the Pods were recyclable.").

## II.   PLAINTIFFS HAVE ARTICLE III STANDING TO BRING THEIR CLAIMS

Defendant contends that Plaintiffs' claims should be "dismissed in their entirety due to lack of standing" because (i) Plaintiffs "cannot plausibly allege an overpayment for the Product" when the "Certified Compostable" claim is true; and (ii) "Earth Rated's advertising of the Product complies with Federal guidelines." MTD at 12-14. Each of these arguments is wrong.

As Defendant admits in its MTD, "'paying for one item and receiving another' or overpaying for a product due to actionable misrepresentations or omissions is generally 'concrete and particularized enough to establish an injury for standing purposes.'"  MTD at 12 (quoting *Gonzalez v. Costco Wholesale Corp*., 2018 WL 4783962, at \*3 (E.D.N.Y. Sept. 29, 2018)). Courts in this District have thus "construed the payment of a premium price to be an injury in and of itself."  *See*, *e.g.*, *Belfiore v. Procter & Gamble Co*., 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (denying defendant's motion to strike because plaintiff sufficiently pled that "his injury was the payment of a premium price based on a misrepresentation on the label.").

Here, Plaintiffs allege that Defendant charges more for the dog waste bags it advertises as "Certified Compostable" than otherwise identical dog waste bags that are not "Certified Compostable."  FAC ¶ 35.  Further, Plaintiffs allege they relied on the "Certified Compostable" claim in deciding to purchase the Product at a premium.  *Id.* ¶¶ 38-39.  However, the "Certified Compostable" claim is false and not properly or conspicuously disclaimed.  *See* Argument §§ I.B.1-I.B.2, *supra*.  Therefore, Plaintiffs did not receive the Product as advertised, and would not have purchased the Product or would have paid less for it had Plaintiffs known the "Certified Compostable" claim was false because the Product is in fact not capable of being composted. FAC ¶¶ 36, 38-39, 58, 66, 105.  Accordingly, Plaintiffs suffered an economic injury sufficient for Article III standing in the form of the price premium paid by Plaintiffs due to the false "Certified Compostable" claim.  *See*, *e.g.*, *Gonzalez,* 2018 WL 4783962, at \*3; *Kurtz v. Kimberly Clark Corp.*, 321 F.R.D. 482, 535 (E.D.N.Y. 2017); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575  (S.D.N.Y. 2021) ("Such an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing."); *Downing v. Keurig Green Mountain, Inc.*, 2021 WL 2403811, at \*7 (D. Mass. June 11, 2021) ("The economic harm caused by buying a product that

15

is allegedly misrepresented to be a higher quality than it is viably makes the claim that Downing has been injured.").

Defendant does not dispute that payment of a price premium is a concrete and particularized injury in fact.  MTD at 12.  Instead, Defendant contends that Plaintiffs "received the benefit of their bargain" (and thus never overpaid for the Product) because its Products "meet the ASTM D6400 and EN13432" industry standards for municipal composting.  *Id.* at 13.  But "[w]hether the label was actually false, whether the product was actually inferior, and whether any resulting injury is measurable are issues for another day that cannot be resolved on a motion to dismiss."  *Downing*, 2021 WL 2403811, at *7.  At this stage, Plaintiffs' allegations are sufficient to allege standing.

Regardless, Defendant's argument misses the point.  Plaintiffs allege that Defendant's "Certified Compostable" claim is false because the Product is *not capable of being composted* and Defendant's inconspicuous disclaimers are not curative.  FAC ¶¶ 10-30; *see also* Argument §§ I.B.1-I.B.2, *supra*.  It thus does not matter whether the Product meets whatever industrial standards Defendant claims it does—and it is disputable that is what Defendant is intending to convey by the "Certified Compostable" claim.  *See Mogull*, 2022 WL 602971, at *3-4; *see also* Argument § I.B.1, *supra*.  Even if certain state laws permit Defendant to use the word "compostable" on the Product's labeling, the claim is still deceptive because Plaintiffs allege the Product is not capable of being composted because animal waste cannot be composted.  *See* §§ I.B.1-I.B.2, *supra*; *see also* 16 C.F.R. § 260.2 ("To determine if an advertisement is deceptive, marketers must identify *all express and implied claims* that the advertisement reasonably conveys.") (emphasis added); *Mogull*, 2022 WL 602971, at *3 (finding representations that eggs were "free-range" deceptive where defendant "argue[d] the challenged statements are true because its farming practices meet the 'Certified Humane Free-Range' qualifications.").

Defendant's argument that Plaintiffs cannot allege an injury because "Earth Rated's advertising of the Product complies with Federal guidelines" is also incorrect. As discussed above, Defendant's advertising *does not* comply with the FTC Green Guides and its purported disclaimers are not curative. Argument § I.B.2, *supra*. Indeed, even Defendant's attempts to disclaim the claim are false and misleading because Defendant admits on the packaging for the 60-count version of the Product that the Product is "not suitable for backyard composting," and admits in a website blog and there are *zero* municipal facilities in the United States that compost dog waste. FAC ¶¶ 10-14, 17-18, 28, 29.[4]

## III.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THEIR WARRANTY CLAIMS

### A.   Plaintiffs Plausibly Allege A Breach of Express Warranty Claim

Defendant contends that "Plaintiffs fail plausibly to allege the existence of an express warranty from Earth Rated to Plaintiffs, must less a breach by Earth Rated." MTD at 19. As an initial matter, whether an express warranty arises from the language and circumstances of a transaction is a question of fact inappropriate for decision at this stage. *See Paulino v. Conopco, Inc.*, 2015 WL 4895234, at *2 (E.D.N.Y. Aug. 17, 2015) ("What a reasonable consumer's interpretation of a seller's claim might be is generally an issue of fact which is not appropriate for decision on a motion to dismiss.") (internal citations omitted); *Goldemberg*, 8 F. Supp. 3d at 483 ("However, as the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for

---

[4] Plaintiffs allege that Defendant's representations are deceptive because Defendant has *failed* to qualify the Product's compostability by failing to clearly and prominently note the "limited availability of municipal or institutional composting facilities" in the United States and indicate that the Product "cannot be composted safely or in a timely manner in a home compost pile," as required. 16 C.F.R. § 260.7(a),(c),(d); *see also* Argument § I.B.2, *supra*.

the warranty claim.").  The same is true of whether any warranty was breached.  *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 146 (S.D.N.Y. 2021).

Should the Court choose to wade into that determination at this stage, however, Defendant's argument is far from correct.  *First*, Defendant does not offer any legal support for its argument that the "Certified Compostable" claim is not an express warranty, nor can it. Under New York law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  N.Y. U.C.C. § 2-313(1)(a); *see also id.* § 2-313(2) ("It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that have a specific intention to make a warranty.").   "As a result, product labels and advertisements can create express warranties."  *Mason*, 515 F. Supp. 3d at 146.  The Product's "Certified Compostable" claim was an express warranty that the Product was capable of being composted.  *Mason*, 515 F. Supp. 3d at 146 ("All-Natural" and "No Preservatives" statements created an express warranty); *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021) ("[T]he Court concludes that plaintiff adequately stated a claim that the 'natural' label on the Products warranted, through its description of the Products, a statement of fact about the Products that was allegedly breached by the inclusion of synthetic ingredients."); *Goldemberg*, 8 F. Supp. 3d at 482-83 (express warranty created by "Active Naturals" claim); *Ebin v. Kangadis*, 2013 WL 6504547, at *4 (S.D.N.Y. Dec. 11, 2013) ("This Court concludes that plaintiffs have adequately pled that Kangadis's '100 Pure Olive Oil' label constitutes a verifiable affirmation of fact—namely that Kangadis's product is '100% Pure Olive Oil,'—and thus is a written warranty sufficient to survive a motion to dismiss.").  And Plaintiffs allege they relied on the "Certified Compostable" warranty when they purchased the Product.  FAC ¶¶ 38-39.

*Second*, Defendant contends that even if it created an express warranty, it didn't breach the warranty because, "[f]or example, the 'certified compostable' warranty relied upon by Plaintiffs specifically warrants that the product is certified as having met specific ASTM and EN standards regarding compostability in industrial or municipal and home composts," and "[n]owhere do Plaintiffs allege that the certifications themselves are false."  MTD at 19.  As noted above, that is *not* what Defendant has warranted by its "Certified Compostable" claim; the industrial standards Defendant references appear *nowhere* on the Product's packaging, much less anywhere in proximity to the claim.  *Mogull*, 2022 WL 602971, at *3, *5; *see also* Argument § I.B.1, *supra*.  And, in any event, Plaintiffs allege the Product is not capable of being composted.  FAC ¶¶ 11-17, 70-71; *see also* Argument §§ I.B.1-I.B.2, *supra*.  Similarly, Defendant argues "Earth Rated's website explicitly states that the 'bags are certified for home composting' but should not be used 'to grow dinner,' 'food crops' or 'anything edible.'"  MTD at 20.  Again, this conflicts with the disclaimer on the 60-count version of the Product, which unequivocally says "not suitable for backyard composting."  FAC ¶ 18.  Further, this assumes Defendant's disclaimers on the box or even the website (which the Product's packaging never expressly directs consumers to) are curative, which they are not.  Argument § I.B.2, *supra*.

*Third*, Defendant argues that "[w]hile Plaintiffs conclusorily allege throughout the FAC that 'pet waste' cannot be composted … other allegations in the FAC undermine this claim.  For example, if that claim (pet waste cannot ever be composted) were true, the 2015 FTC article cited by Plaintiffs would have said that claims about compostability of pet waste are 'always' untrue – not 'generally untrue.'"  MTD at 20.  This is wrong.  As an initial matter, these claims can sometimes be true because some manufacturers may properly qualify their "compostable" claims such that the claims are not deceptive.  Defendant is not one such manufacturer.  *See* Argument §§ I.B.1-I.B.2, *supra*.

*Finally*, Defendant also claims that Plaintiffs "misleadingly quote the EPA's undated 'Do You Scoop The Poop?' article" because Plaintiffs "omit the fact that the same article says pet waste "adds harmful bacteria and nutrients to local waters, *when it's not disposed of properly*." MTD at 20 n.8 (emphasis in original).  This does not mean the Product can be composted.  On the contrary, the 2017 article unequivocally states pet waste "doesn't simply decompose" due to the bacteria and other contaminants released by dog waste.  FAC ¶¶ 12-13.  The article therefore states "the easiest way to avoid these problems is to clean up after your pet each and every time, and dispose of the waste properly," specifically by "dispos[ing] of the waste *in the garbage*."[5] The article *does not* mention bringing the pet waste to specific facilities for composting because not only does the article state that pet waste cannot be composted in general, Defendant admits such facilities are "not available in the United States."  *Id.* ¶¶ 13-14.  Therefore, it is Defendant who is misleadingly quoting the article.

In sum, Plaintiffs have alleged that the "Certified Compostable" claim was an express warranty, which Plaintiffs relied on in purchasing the Product and which Defendant breached because the Product is not capable of being composted.

### B.     Plaintiffs Plausibly Allege Violations Of The Magnuson-Moss Warranty Act

Defendant contends that "because Plaintiffs have failed to state a claim for beach of express warranty and breach of implied warranty under state law, Plaintiffs' MMWA claim should be dismissed as well."  MTD at 21.  Defendant's argument is premature and wrong.

To start, Defendant's argument is inappropriate for a decision at this stage.  *See Sitt v. Nature's Bounty, Inc.,* 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016) ("[B]ecause the Court cannot conclude that the Product could not mislead a reasonable consumer, the Court

---

[5] https://web.uri.edu/riss/files/8.PetCare.FactSheet.pdf (emphasis added).

cannot conclude as a matter of law that Defendants' representations about the Product would not amount to a warranty that could induce a consumer to purchase the Product, and which is therefor actionable as an express warranty under either New York law or the MMWA."). The Court need not go further at this juncture.

However, if the Court determines that Defendant's argument is ripe for a decision now, Plaintiffs have sufficiently alleged a violation of the MMWA via Plaintiffs' express warranty claim. *See Brady v. Basic Research, LLC.,* 101 F.Supp.3d 217, 234 (E.D.N.Y. 2015) ("MMWA 'merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages' … and thus, plaintiffs' breach of express warranty and MMWA claims stand or fall together."). Accordingly, because Plaintiffs have stated breach of express warranty claims, they have also stated violations of the MMWA. Argument § III.A., *supra.*

## IV. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THEIR FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS UNDER FED. R. CIV. P 9(B)

### A. Plaintiffs Have Sufficiently Stated A Claim For Fraud

Defendant argues that "Plaintiffs have not plausibly alleged any claims amounting to fraud, particularly in light of Rule 9(b)'s heightened pleading standard." MTD at 22. Defendant is wrong.

To state a claim of fraud under New York law, a "plaintiff must establish that: (1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Rossi v. Gem Nation Corp.*, 2021 WL 7906550, at *2 (E.D.N.Y. July 27, 2021) (internal quotations and citations omitted). "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *United States ex.*

*Rel. Polansky v. Pfizer, Inc.*, 2009 WL 145682 (E.D.N.Y. May 22, 2009).  Plaintiffs have done

so here:

| | |
|---|---|
| **Who:** | "Defendant 9199-4467 Quebec Inc. d/b/a Earth Rated … markets, sells, and distributes the Product throughout the United States, including in the State of New York."  FAC ¶ 40. |
| **What:** | "On the packaging the 60-count …. 105-count and 225-count versions of the Product … Defendant represents that the Product is 'Certified Compostable.'"  *Id.* ¶ 6.  "Problematically for consumers, these claims are false and misleading. Indeed, the Federal Trade Commission ("FTC") has stated that "compostable" claims on dog waste products are 'generally untrue.'"  *Id.* ¶ 10.  This is because "dog waste is generally not safe to compost at home, and very few facilities accept this waste."  *Id.* ¶ 11 (emphasis removed).  "Even in backyard composting, the U.S. Environmental Protection Agency cautions that dog waste can contain harmful parasites, bacteria, viruses, or pathogens."  *Id.* ¶ 12.  And Defendant admits "on a blog post on its website that is not linked in any way to the Product's page" that "industrial composting of pet waste is not currently available in the USA."  *Id.* ¶ 14.  *See also generally id.* ¶¶ 11-17. |
| **Where:** | "[O]n each version of the Product and on its website, Defendant represents that the Product is capable of being composted." *Id.* ¶ 9; *see also id.* ¶¶ 5-8, 14. |
| **When:** | "In September 2021, Plaintiff Natale purchased a 60-count package of the Product from NYC Pet." *Id.* ¶ 38.  "In October 2020, Plaintiff Cheng purchased a 225-count package of the Product from Amazon."  *Id.* ¶ 39. |
| **How:** | "The 'certified compostable' claims are an example of 'greenwashing.' 'Greenwashing is the process of conveying a false impression or providing misleading information about how a company's products are more environmentally sound … [C]ompanies engaged in greenwashing typically exaggerate their claims or the benefits in an attempt to mislead consumers.'"  *Id.* ¶ 31.  "In other words, modern consumers purchase products that claim to be environmentally friendly, and are even willing to pay more for such products over their non-sustainable competitors."  *Id.* ¶ 34.  "Indeed, Defendant capitalizes on this market, and charges more for its dog waste bags that it claims are "certified compostable," as compared to those that lack such claims."  *Id.* ¶ 35. |

Accordingly, "there is ample particularization of [Plaintiffs'] allegations."  *Jovel v. i-Health,*

*Inc.*, 2013 WL 5437065, at *11 (E.D.N.Y. Sept. 27, 2013); *see also Ebin*, 2013 WL 6504547, at

*4; *Patellos v. Hello Prod., LLC*, 523 F. Supp. 3d 523, 531 (S.D.N.Y. 2021); *Mogull*, 2022 WL

602971, at *4-5.

**B.      Plaintiffs Have Sufficiently Stated A Claim For Negligent Misrepresentation**

Defendant argues that Plaintiffs have failed to state a claim for negligent misrepresentation "because [Plaintiffs] cannot plead the existence of justifiable reliance."  MTD at 24.[6]  This is not correct.

"[T]o state a claim for negligent misrepresentation in connection with a commercial transaction, a plaintiff must plead justifiable reliance."  *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 474 (E.D.N.Y. 2013) (internal quotations and citations omitted).  When assessing justifiable reliance, courts consider three factors: (1) "whether the person making the representation held or appeared to hold unique or special expertise; [(2)] whether a special relationship of trust or confidence existed between the parties; and [(3)] whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."  *Hughes*, 930 F. Supp. 2d at 474-75 (internal quotations and citations omitted).  A plaintiff needs not expressly plead the existence of a special relationship of trust; courts "may infer a special relationship between the parties" based on facts alleged in the complaint.  *Id.* at 475.  However, even where a court finds that "a plaintiff fails to allege the existence of a special relationship, or the relationship is only sparsely pled," the plaintiff can successfully plead a negligent misrepresentation claim by "emphatically alleg[ing] the other two factors."  *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 75-76 (E.D.N.Y. 2017).

Here, Plaintiffs allege that Defendant held or appeared to hold unique or special expertise because it had superior knowledge of the characteristics of the Product, *i.e.*, that the Product was not capable of being composted when used for its intended purpose.  FAC ¶ 17.  Defendant's contention that the Product meets certain industry standards allegedly applicable to the Product

---

[6] Defendant does not argue that Plaintiffs have failed to allege any other element of a claim for negligent misrepresentation. MTD at 22-24.

(*i.e.*, the ASTM D6400 standard for municipal composting and the EN13432 for home and industry composting) also support that Defendant has had special expertise and knowledge. FAC ¶ 7; *see also Rossi*, 2021 WL 7906550, at *4 (finding that the plaintiff sufficiently alleged defendant's specialized expertise and knowledge about the true quality of its gemstones because the defendant claimed that it had "relied on independent certifying agencies to ascertain the quality"). Plaintiffs further allege that Defendant knew that Plaintiffs would rely on its representations because Defendant "placed [the certified claim] prominently on advertisements and on the [Product's packaging] itself." *Gerber Prod. Co.*, 262 F. Supp. 3d at 76; *see also Hughes*, 930 F.Supp.2d at 475 ("[D]efendants understood that the content of their labeling, packaging and website—indeed, all forms of their marketing and branding—would be used by consumers for the purpose of evaluating Ester–C in comparison to the numerous other brands of vitamin supplements on the market."); FAC ¶¶ 102, 104. Indeed, Defendant sells a version of the Product that does not have the "Certified Compostable" claim but is otherwise identical to the Product, and charges more for the version of the Product with the claim. FAC ¶ 35. It is inconceivable how Defendant could argue that this claim was not material to consumers, much less that consumers did not "justifiably rely" on the claim.

Defendant argues that this case is distinguishable from *Hughes*. MTD at 24. On the contrary, this case is exactly like *Hughes*. Just as the defendant in *Hughes* advertised its product as having "good clinical research" and being "committed to clinical studies" (*Hughes*, 930 F. Supp. 2d at 475), the Product here is "*Certified* Compostable." FAC ¶¶ 5-6. This certification implies to consumers that Defendant has done some degree of testing to ensure the Product is capable of being composted. *See Hughes*, 930 F. Supp. 3d at 475 ("Plaintiffs also assert that the product's labeling also contains language that, at the very least, suggests some level of medical or scientific backing for its claims."). And, like *Hughes*, Defendant understood "all forms of

[its] marketing and branding [] would be used by consumers for the purpose of evaluating [the Product] in comparison to the numerous other brands of [dog waste bags] on the market."  *Id*. Indeed, Defendant understood consumers would rely on the "Certified Compostable" claim in deciding to purchase the Product instead of Defendant's other dog waste bags, which do not contain the "Certified Compostable" claim but are otherwise identical, because "modern consumers purchase products that claim to be environmentally friendly, and are even willing to pay more for such products over their non-sustainable competitors".  FAC ¶¶ 34-35; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011) ("[L]abels matter.  The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source.").  Thus, just as in *Hughes*, Plaintiffs here have sufficiently plead justifiable reliance on Defendant's misrepresentations.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in full.[7]  If the Court determines that the pleadings are deficient in any respect, Plaintiffs request leave to amend to cure any such deficiencies.  *Sec. Exchange Commission v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 254 (S.D.N.Y. 2013) ("When a court grants a motion to dismiss, it is often appropriate to grant leave to amend the complaint—particularly when Rule 9(b) applies.").

Dated: July 6, 2022                         Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By:    */s/ Max S. Roberts*
                                                    Max S. Roberts

---

[7] Plaintiffs voluntarily dismiss their implied warranty and unjust enrichment claims without prejudice.  Plaintiffs have not requested injunctive relief in their FAC, but to the extent they have, they dismiss that request without prejudice as well.

Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice*)
Brittany S. Scott (*Pro Hac Vice*)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ltfisher@bursor.com
          bscott@bursor.com

*Attorneys for Plaintiffs*