UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
MEGANNE NATALE and CHELSEA CHENG,
individually and on behalf of all
others similarly situated,                    MEMORANDUM & ORDER
                                              21-CV-6775 (JS)(SIL)

                    Plaintiffs,

        -against-

9199-4467 QUEBEC INC., d/b/a
EARTH RATED,

                    Defendant.
--------------------------------X
APPEARANCES
For Plaintiffs:      Max Stuart Roberts, Esq.
                     Bursor & Fisher, P.A.
                     1330 Avenue of the Americas, 32nd Floor
                     New York, New York  10019

                     Brittany Scott, Esq.
                     Lawrence T. Fisher, Esq.
                     Bursor & Fisher, P.A.
                     1990 North California Boulevard, Suite 940
                     Walnut Creek, California  94596

For Defendant:       Alan F. Kaufman, Esq.
                     Nelson Mullins Riley & Scarborough LLP
                     330 Madison Avenue, 27th Floor
                     New York, New York  10017

                     Jahmy Graham, Esq.
                     Nelson Mullins Riley & Scarborough LLP
                     19191 South Vermont Avenue, Suite 900
                     Torrance, California  90502

SEYBERT, District Judge:

        9199-4467 Quebec Inc. d/b/a Earth Rated ("Defendant" or

"Earth Rated") moves, pursuant to Rules 9(b), 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure (the "Rules"), to dismiss

the  First  Amended  Complaint  (the  "FAC")  of  Meganne  Natale

("Natale") and Chelsea Cheng ("Cheng" and collectively with Natale "Plaintiffs") (hereafter, the "Motion"). (See Motion, ECF No. 21.) For the reasons that follow, Defendant's Motion is GRANTED IN PART AND DENIED IN PART.

BACKGROUND[1]

Defendant "is a Canadian corporation with its principal place of business [in] . . . Canada." (FAC, ECF No. 20, ¶ 40.) One of the products Defendant sells is a range of "Earth Rated Certified Compostable Poop Bags" (the "Product"). (Id. ¶ 4, 6.) "Defendant markets, sells, and distributes the Product throughout the United States, including in the State of New York." (Id. ¶ 35.) Plaintiffs are both New York domiciliaries each of whom relied upon Defendant's representations that the Product was "certified compostable" when buying the Product. (Id. ¶ 38, 39.)

"The Product comes in three different sizes: 60 bags, 105 bags, and 225 bags." (Id. ¶ 4.) "On the packaging [of] the 60-count version of the Product, Defendant represents that the Product is 'Certified Compostable.'" (Id. ¶ 5.) The packaging for the 105-count and the 225-count versions of the Product are "identical in all respects except for the size" and likewise state that they are "Certified Compostable." (Id. ¶ 6.) Defendant claims on its website that its "certified compostable bags meet

---

[1] The following facts are drawn from the FAC with all reasonable inferences drawn in favor of Plaintiffs.

the ASTM D6400 standard for municipal composting as well as the EN13432 Home and Industrial standards for compostability." (Id. ¶ 7.) Defendant also represents on its website that the Product "is 'certified for home composting' and is compostable at a 'city compost' facility." (Id. ¶ 8.) "On the back of the 60-count version of the Product," the packaging "includes a small print disclaimer in small font" stating: "**COMPOSTABLE** IN INDUSTRIAL FACILITIES[.] Check locally, as these do not exist in many communities." (Id. ¶ 18.) Contrary to what is stated on the website, the packaging also states "**[n]ot suitable for backyard composting.**"[2] (Id. (emphasis in original).) "Defendant also includes a small print disclaimer on the side panel of the 60-count version of the Product" stating: "[s]hould only be disposed of in commercial composting facilities where pet waste is accepted." (Id. ¶ 19.) The 105-count and 225-count versions of the Product also include small-print disclaimers stating: "Should only be disposed of in commercial composting facilities where pet waste is accepted. These facilities may not exist in your area. If you want to compost your pet waste in a home compost, please

---

[2] The representation on the 60-count version of the Product that the Product is, in fact, not suitable for home composting also contradicts representations made on the 105- and 225-count versions of the Product which state that the Product is suitable for backyard composting, but only with non-food crops. (See FAC ¶ 20.)

ensure to only use the resulting compost on non-food crops." (Id.
¶ 20.)

The Product page on Defendant's website also contains
disclaimers; however, to view the disclaimers, customers are
required to click a "Read more+" tab. (Id. ¶ 25.) Defendant's
website also contains "several FAQs on the Product page." (Id.
¶ 26.) However, "[t]he FAQs themselves do not indicate any sort
of disclaimer is present by their titles;" instead, users must
navigate to an innocuously titled FAQ: "[h]ow should I dispose of
the compostable poop bags" (the "How-To-Page"), to access the
disclaimers. (Id. ¶ 27.) Once accessed, the How-To-Page informs
users that the Product "can be composted in municipal facilities
**that accept pet waste.**" (Id. (emphasis in original).) The
disclaimer continues, "Municipal composting facilities that accept
pet waste do not exist in many communities[,] so be sure to check
locally for such facilities in your area." (Id.) Plaintiffs aver
that "[n]o reasonable consumer would expect that by clicking on
ambiguously named or indiscriminate links, they would find small
print language on Defendant's website . . . that would contain
language inconsistent with the representation that the Product is
capable of being composted." (Id. ¶ 28.)

Plaintiffs contend that Defendant's composting
representations are false citing the Federal Trade Commission (the
"FTC") which "has stated that 'compostable' claims on dog waste

4

products are 'generally untrue.'" (<u>Id.</u> ¶ 10.)  Specifically,
Plaintiffs highlight language from the FTC that "dog waste cannot
be composted because it can contain harmful contaminants (<u>e.g., E.
Coli</u>)." (<u>Id.</u> at ¶ 12.)  Additionally, Plaintiffs note that the
U.S. Environmental Protection Agency has stated that "[e]ven in
backyard composting . . . dog waste can contain harmful parasites,
bacteria, viruses, or pathogens." (<u>Id.</u>)  Plaintiffs aver that
Defendant's statement -- that its bags can be put into a city
compost "if [the] city's municipal composting accepts pet waste"
-- is also false and misleading because "industrial composting of
dog waste is **not available in the United States.**" (<u>Id.</u> at ¶¶ 8,
11, 14. (emphasis in original.))  Defendant admits as much "on a
blog post on its website[,] that is not linked in any way to the
Product's page." (<u>Id.</u> ¶ 14.)  Plaintiffs argue that "[n]o
reasonable consumer would expect that the small print language on
the back and side panels of the Product would contain language
inconsistent with the representation that the Product is capable
of being composted." (<u>Id.</u> ¶ 21.)  Likewise, Plaintiffs contend
that no reasonable consumer would "expect that a 'certified
compostable' dog waste bag would not be capable of being
composted." (<u>Id.</u> ¶ 28.)

As part of its regulatory function, the FTC provides
marketers with "examples of deceptive conduct" (the "Green

Guides.") (Id. ¶ 16.) Plaintiffs highlight two relevant examples wherein the FTC offers the following hypothetical scenarios:

> **Example 2:**
> A garden center sells grass clipping bags labelled as 'Compostable in California Municipal Yard Trimmings Composting Facilities.' When the bags break down, however, they release toxins into the compost. **The claim is deceptive if the presence of these toxins prevents the compost from being usable** ["Example 2."]
>
> **Example 4:**
> Nationally marketed lawn and leaf bags state 'compostable' on each bag. The bags also feature text disclosing that the bag is not designed for use in home compost piles. Yard trimmings programs in many communities compost these bags, but such programs are not available to a substantial majority of consumers or communities where the bag is sold. **The claim is deceptive because it likely conveys that composting facilities are available to a substantial majority of consumers or communities.** ["Example 4."]

(Id. (quoting 16 C.F.R. § 260.7(d) (emphasis added)).) Plaintiffs argue these FTC examples "are analogous to the issue here." (Id. ¶ 17.) Plaintiffs highlight that "[l]ike Example 2, the inability to compost dog waste due to the presence of parasites, bacteria, viruses, and pathogens prevents compost from being usable." (Id.) Similarly, Plaintiffs allege that "like Example 4, facilities that can compost dog waste are not available to most (if not all) U.S. consumers, and Defendant does not clarify this on the Product's packaging." (Id.)

Regarding pricing, the 60-count version of the Product sells for $8.99, approximately $0.15 per bag. By contrast, a similar 120-bag product offered by Defendant, that is not certified compostable, sells for $6.99, approximately $0.06 per bag. (Id. ¶ 36.) Plaintiffs contend "Defendant represents that the Product is 'certified compostable' and charges a price premium for the Product based on this representation." (Id.)

On or about September 2021, "Plaintiff Natale purchased a 60-count package of the Product from NYC Pet (a local pet store in her neighborhood)." (Id. ¶ 38.) On or about "August 2020, Plaintiff Cheng purchased a 225-count package of the Product from Amazon (through which Defendant conducts significant business)." (Id. ¶ 39.) Before purchasing the Product, Plaintiffs "reviewed the [P]roduct's labeling and packaging and saw that [the] Product was labeled and marketed as 'certified compostable'"; both Plaintiffs "relied on Defendant's representations that the Product was 'certified compostable'" in completing each respective purchase. (Id. ¶ 38, 39.) The Plaintiffs "would not have purchased [the] Product on the same terms had [Plaintiffs] known those representations were not true." (Id.)

PROCEDURAL HISTORY

Plaintiffs filed their original Complaint on December 7, 2021. (See Compl., ECF No. 1.) On March 24, 2022, Defendant filed a pre-motion conference request in anticipation of filing a motion to dismiss the Complaint (the "PMC Request"). (See PMC Request, ECF No. 13.) Plaintiffs opposed Defendant's PMC Request. (See PMC Opp'n, ECF No. 14.) Notwithstanding Plaintiffs' opposition, on May 5, 2022, the Court held a pre-motion conference and set a briefing schedule on the dismissal motion. (See Min. Entry, ECF No. 19.) The Court also granted Plaintiffs leave to file their FAC, which they did on May 6, 2022 (Id.; see also FAC.) Plaintiffs' FAC asserts eight causes of action: (1) violation of N.Y. General Business Law ("G.B.L.") § 349; (2) violation of N.Y. G.B.L. § 350; (3) breach of express warranty; (4) breach of implied warranty; (5) violation of the Magnuson-Moss Warranty Act ("the "MMWA"); (6) unjust enrichment; (7) negligent misrepresentation; and (8) fraud. (See FAC ¶ 53-112.) Defendant moved to dismiss Plaintiffs' FAC on June 6, 2022. (See Motion; see also Support Memo, ECF No. 21-1, attached to Motion.) On July 6, 2022, Plaintiffs opposed Defendant's Motion (see Opp'n, ECF No. 25), to which Defendant filed a Reply on July 21, 2022. (See Reply, ECF No. 26.)

DISCUSSION

I.  Legal Standard

    A. Rule 12(b)(1)

        "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  While the Court must "generally accept the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still 'bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 75 (2d Cir. 2022) (quoting Cortland St. Recovery Corp. v. Hellas Telecomms., S.a.r.l., 790 F.3d 411, 417 (2d Cir. 2015)).  Thus, while the Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff . . . 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" Rosenberg v. McCarthy, Burgess & Wolff, Inc., No. 21-CV-2199, 2022 WL 3030390, at *2 (E.D.N.Y. Aug. 1, 2022) (quoting Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)). "Ultimately, 'the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" Id. (quoting Tandon v. Captain Cove Marina of

9

Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (further citation omitted)). "[T]he 'irreducible constitutional minimum' of standing" requires a plaintiff to show he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

   B. Rule 12(b)(6)

   "The standard of review for a motion to dismiss under Rule 12(b)(6) . . . is 'substantively identical' to the Rule 12(b)(1) standard." Epstein v. JPMorgan Chase & Co., No. 13-CV-4744, 2014 WL 1133567, at *5 (S.D.N.Y. Mar. 21, 2014) (quoting Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003)), abrogation on other grounds recognized by Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016). When considering a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Consequently, a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558. Similarly, a complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

     C. Rule 9(b)

A higher pleading standard applies to allegations of "fraud or mistake," which "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "ordinarily requires a complaint alleging fraud to '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc., 865 F.3d 71, 81 (2d Cir. 2017) (quoting U.S. ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016)).

II.  <u>Analysis</u>

    A. <u>Rule 12(b)(1): The FAC Adequately Alleges Economic Injury Sufficient for Purposes of Standing</u>

       As an initial matter, the Court addresses Defendant's argument that Plaintiffs lack standing because they cannot allege injury-in-fact.

       To demonstrate injury-in-fact, a plaintiff must show: (1) "the 'invasion of a legally protected interest'"; (2) "that is 'concrete and particularized'"; and (3) "'actual or imminent, not conjectural or hypothetical.'" <u>Strubel v. Comenity Bank</u>, 842 F.3d 181, 188 (2d Cir. 2016) (quoting <u>Lujan</u>, 504 U.S. at 560-61).  "To demonstrate a concrete injury, a plaintiff must show that it 'actually exist[s],' meaning it is 'real and not abstract.'" <u>Duchimaza v. Niagara Bottling, LLC</u>, 619 F. Supp. 3d 395, 408 (S.D.N.Y. 2022) (quoting <u>Strubel</u>, 842 F.3d at 188.))  "[T]he law is clear that economic injury -- including that caused by paying a premium -- is sufficient to establish injury for standing purposes." <u>Kacocha v. Nestle Purina Petcare Co.</u>, No. 15-CV-5489, 2016 WL 4367991, *7 (S.D.N.Y. Aug. 12, 2016); <u>see also</u> <u>Belfiore v. Procter & Gamble Co.</u>, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) ("Courts have construed the payment of a premium price to be an injury in and of itself"); <u>Segedie v. Hain Celestial Grp., Inc.</u>, No. 14-CV-5029, 2015 WL 2168374, *12 (S.D.N.Y. May 7, 2015) ("Plaintiffs have also adequately alleged injury by claiming that

they paid a price premium that they would not have paid if the products were not labeled 'natural' or 'all natural.'").

Summarily Defendant's standing argument is that since the Product is, in fact, "Certified Compostable" as advertised, the Plaintiffs received the benefit of their bargain when they purchased the Product. (See Support Memo at 13.) Defendant highlights that the Product meets "the ASTM D6400 and EN13432 Standards for compostability" and that the FAC does not dispute the Product's certifications. (Id. at 13-14.) Defendant also contends that the Product complies with the applicable sections of the FTC's Green Guides. (Id. at 14-15.) Specifically, Defendant argues that the disclaimers on the Product regarding the limited availability of suitable composting facilities are in-line with example language promulgated by the FTC that would allow a marketer of such a product to avoid marketing a deceptive product. (Id.) As to Cheng, Defendant inconspicuously raises, in a footnote, that it "has no record of a customer by [that] name purchasing the Product via Amazon.com as alleged. (Id. at 8 n.6.)[3]

---

[3] Plaintiff did not respond to Defendant's footnote regarding Cheng. (See Opp'n, in toto.) Nevertheless, given that Defendant's standing challenge is based on the pleadings, the Court must "accept as true all material allegations of the complaint," Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010), which includes Cheng's factual assertion that she purchased the Product via Amazon.com. To the extent Defendant later becomes aware of evidence which disproves Cheng's factual assertion, Defendant may renew its argument then, and without first filing a motion for a pre-motion conference.

Plaintiffs counter that Defendant charges a premium price for the Product because it is "Certified Compostable" and that "overpaying for a product due to actionable misrepresentations or omissions is generally concrete and particularized enough to establish an injury for standing purposes." (Opp'n at 14-15 (internal citations omitted).) Plaintiffs continue that they relied upon Defendant's "'Certified Compostable' claim in deciding to purchase the Product at a premium." (Id. at 15.) This claim, Plaintiffs allege, is "false and not properly or conspicuously disclaimed." (Id.) Plaintiffs clarify that Defendant's "Certified Compostable" claim is false because the Product is not capable of being composted. (Id. at 5, 15). Specifically, Plaintiffs allege that: (1) the nature by which dog waste releases harmful bacteria when it decomposes means it cannot safely be composted in a backyard setting; and (2) while the Product can be composted in certain municipal industrial facilities that accept pet waste, there are no such facilities currently available in the United States. (Id.) Notwithstanding the Product's certifications, Plaintiffs allege that the Product is not capable of being composted, and that Defendant's disclaimers on this point were not curative. Absent Defendant's representations as to the compostability of the Product, Plaintiffs aver that they would not have purchased the Product or would have paid less for it than they ultimately did.

14

The Court finds that payment of a premium price is sufficient for standing purposes.  Defendant's arguments to the contrary essentially require the Court to "do what [it] cannot," at this stage, that is, "decide the merits of [Plaintiffs'] claim[s] en route to determining [their] justiciability." Dubuisson v. Stonebridge Life Ins. Co., 887 F.3d 567, 575 (2d Cir. 2018); see also Cummings v. FCA US LLC, 40 F. Supp. 3d 288 (N.D.N.Y. 2019) ("Article III standing is not based on a determination of the merits of any of Plaintiff's substantive claims.") Consequently, the economic injury alleged in the FAC is sufficient for Article III standing purposes.[4]

B. Rule 12(b)(6) Motion[5]

    1. Plaintiffs Have Adequately Pled Claims Under N.Y. G.B.L. Sections 349 & 350

Section 349 of the N.Y. G.B.L. prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  "Deceptive acts" are acts which are "likely to mislead a reasonable consumer acting reasonably under the circumstances." Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013).  "To make out a prima facie case

---

[4] To the extent Defendant's arguments are relevant to the Rule 12(b)(6) portion of its Motion, the Court will address them in that context.

[5] The Court will analyze Defendant's Rule 12(b)(6) arguments as to the applicable causes of action.

under [N.Y. G.B.L.] Section 349, a plaintiff must demonstrate that
(1) the defendant's deceptive acts were directed at consumers,
(2) the acts are misleading in a material way, and (3) the
plaintiff has been injured as a result." Chufen Chen v. Dunkin'
Brands, Inc., 954 F.3d 492, 500 (2d Cir. 2020) (quoting Maurizio
v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)).  Likewise, N.Y.
G.B.L. § 350 makes unlawful "[f]alse advertising in the conduct of
any business, trade or commerce or in the furnishing of any
service" within New York State.  Duchimaza, 619 F. Supp. 3d at
411.  "Although GBL § 350 is specific to false advertising, its
standards are identical to those of § 349." Id. (citing Denenberg
v. Rosen, 71 A.D.3d 187, 194 (2d Dep't 2010); see also Braynina v.
TJX Cos., No. 15-CV-5897, 2016 WL 5374134, at *4 (S.D.N.Y. Sept.
26, 2016) ("[C]ourts have found that the scope of § 350 is as broad
as that of § 349 . . . and that its essential elements are the
same[.]" (internal citation omitted)).  "Under either" G.B.L.
§ 349 or § 350, "[i]t is well settled that a court may determine
as a matter of law that an allegedly deceptive advertisement would
not have misled a reasonable consumer." Chufen Chen, 954 F.3d at
500 (quoting Fink, 714 F.3d at 741).

                                              i. Plaintiffs Have Plausibly Alleged the
Product's Packaging Does Not Comply with the
Green Guides

          Pursuant to N.Y. G.B.L. § 349(d), it is a "complete
defense" to liability under that section if Defendant's "act or

16

practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by, the [FTC] or any other official department, division, commission or agency of the United States." The same is true under N.Y. G.B.L. § 350. See N.Y. G.B.L. § 350-d(a) ("[I]t shall be a complete defense that the [allegedly unlawful] advertisement is subject to and complies with the rules and regulations of, and the statutes administered by the [FTC] or any official department, division, commission or agency of the state of New York.").

> Under 16 C.F.R. Section 260.7:
>
> A marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of, usable compost . . . in a safe and timely manner . . . in an appropriate composting facility, or in a home compost pile or device.

16 C.F.R. § 260.7(b). Furthermore, "to avoid deception" marketers are required to "clearly and prominently qualify compostable claims to the extent necessary to avoid deception" if an item "cannot be composted safely or in a timely manner in a home compost pile or device." Id. § 260.7(c) (emphasis added). Additionally, "[t]o avoid deception about the limited availability of municipal or institutional composting facilities, a marketer should clearly and prominently qualify compostable claims if such facilities are

not available to a substantial majority of consumers or communities where the item is sold." Id. § 260.7(d) (emphasis added).

Defendant argues that it should be able to take advantage of the safe harbor provisions because it "has provided appropriate disclaimers in compliance with 16 C.F.R. § 260.7." (Support Memo at 17.) Specifically, Defendant notes it "places a clear and prominent disclaimer on the back panel of the 60-count Product packaging stating that the Product is 'compostable in industrial facilities' but that consumers should 'check locally; as these do not exist in many communities.'" (Id. at 15.) Additionally, Defendant maintains it warns on its 60-count packaging that the Product is "[n]ot suitable for backyard composting." (Id.) As to the 105-count and 225-count Product packaging, Defendant states that the packaging contains the same limiting disclaimer regarding the availability of composting facilities; moreover, there is a disclaimer warning that "any home composting of pet waste should not be used on food crops." (Id.) Defendant contrasts its disclaimers with those provided in the FTC's Example 4, asserting they are "nearly identical." (Id.)

Plaintiffs counter that Defendant's disclaimers are not compliant with the FTC's Green Guides because the disclaimers are not "clearly and prominently" displayed since they are located on the side and rear panels of the Product's packaging and contradict Defendant's "Certified Compostable" claim, which is prominently

located on the face of the Product.   (Opp'n at 13-14.)   Further,
Plaintiffs argue that Defendant's disclaimers are inconsistent
both with information on Defendant's website, which states
"industrial composting of dog waste is not available in the United
States," and with each other in that the 60-count package contains
a disclaimer stating the Product is not suitable for home
composting but the larger count Products state they are compostable
at home, but not for food crops.   (Id.)   Regardless, of the
contradiction, Plaintiffs also allege that pet waste is not safe
to compost at all due to its release of harmful bacteria as it
decomposes; Plaintiffs analogize this argument to the FTC's
Example 2.   (Id. at 5, 6.)

          At this nascent stage of the case, the Court finds
Plaintiffs have plausibly alleged that Defendant's Product does
not comply with the Green Guides.  Example 4, upon which Defendant
relies does not support its argument.   In Example 4, the
hypothetical product is compostable as part of a composting
program.  Example 4, further presupposes that while not available
to the majority of consumers, a significant percentage of
communities do offer the program.  Here, by contrast Plaintiffs
plausibly allege, and Defendant's website seems to affirm, that no
appropriate industrial facilities presently exist in the United
States, i.e., there is no such composting program available.   In
such circumstances, where appropriate facilities are not merely

19

limited, but are in fact non-existent, the suggested language that customers should "check locally" because such facilities "do not exist in many communities," or that facilities "may not exist in [the customer's] area," is plausibly deceptive in that it suggest that if consumers were to look for an appropriate facility they may find one, when, in actuality, no such facilities exist. See Downing v. Keurig Green Mountain, Inc., No. 20-CV-11673, 2021 WL 2403811, at *6 (D. Mass. June 11, 2021) (finding manufacturer's disclaimer that customers should "check locally" may be insufficient to avoid deceptive marketing where plaintiff alleged "most recycling centers [did] not accept [Keurig] Pods and only 30% of Keurig Pods were recyclable at facilities that accepted them"). This issue is compounded by Defendant's contradictory disclaimers. If the Product cannot safely be composted in a backyard setting, which Plaintiffs plausibly allege is the case "due to the presence of parasites, bacteria, viruses, and pathogens", and if there are no appropriate composting facilities in the United States, the "Certified Compostable" statement, regardless of whether the statement is itself true by industry standards, is potentially deceptive in that, in reality, the Product cannot be composted by American consumers at all. See Smith v. Keurig Green Mountain, Inc., 393 F. Supp. 3d 837, 847-48 (N.D. Ca. 2019) (finding defendant's disclaimer advising consumers to "check locally to recycle empty cup[s]" was potentially

misleading because the disclaimer "indicate[s] that the Pods are recyclable somewhere, whereas the complaint alleges that the Pods are not recyclable at all").

Additionally, the extent to which Defendant's disclaimers, which are located on the side and rear of the Product's packaging and in small font, are "clearly and prominently" displayed is a question unsuitable for resolution on a motion to dismiss.

> ii. <u>Plaintiffs Have Plausibly Alleged a Reasonable Customer Could Have Been Misled by Defendant's Product Advertising</u>

"[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." <u>Fink</u>, 714 F.3d at 742. "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." <u>Id.</u> "In other words, courts assess 'each allegedly misleading statement in light of its context on the product label or advertisement as a whole,' contemplating '[t]he entire mosaic . . . rather than each tile separately." <u>Mogull v. Pete and Gerry's Organics, LLC</u>, 588 F. Supp. 3d 448, 453 (S.D.N.Y. 2022) (quoting <u>Belfiore</u>, 311 F.R.D. at 53.) While "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer," <u>Nelson v. MillerCoors, LLC</u>, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) (quoting <u>Fink</u>, 714 F.3d

at 741), "[t]here is significant authority supporting the idea that it is inappropriate for a court to decide whether a reasonable consumer could be misled at the Rule 12(b)(6) stage." Lugones v. Pete and Gerry's Organic, LLC, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020) (citing Kacocha, 2016 WL 4367991, at *14 (collecting cases)). "Consequently, '[d]ismissal [at the motion to dismiss stage] is warranted only in a rare situation where it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" Mogull, 588 F. Supp. 3d at 453 (quoting Hesse v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020)).

        Defendant argues that the Court should determine, as a matter of law, that no reasonable consumer would be misled by the Product's packaging because the "Certified Compostable" statement on the front of the packaging "is congruent with the disclaimer that pet waste should not be used in a home compost for growing food crops or that a facility to compost pet waste may not be in the consumer's area." (Support Memo at 18.) Defendant emphasizes that "[t]he Product is still capable of being composted even if it cannot be composted in exactly the way Plaintiffs desire." (Id.) Regarding the disclaimer language, Defendant highlights that it is "set apart and is not contained in other text, so that it can be clearly identified." (Id.) Finally, Defendant notes that its compostable claim is qualified by the "certified" language "which

indicates that in advertising its Product as 'certified compostable' [Defendant] was communicating something specific about its compostable nature, and that is the fact that the . . . Product meets a specific standard." (Reply at 3-4.) Defendant further states that its website makes clear that "Certified Compostable" "means that the Product meets certain ASTM and EN standards." (Id. at 5.)

Plaintiffs counter that "[n]owhere in or around" Defendant's "Certified Compostable" claim 'or anywhere on the consumer-facing side of the package, is there any link between that claim and any sort of industrial standard." (Opp'n at 4.) Additionally, Plaintiffs argue that it is irrelevant whether the Product meets industrial standards because "the FTC has noted, 'compostable' claims on dog waste products are 'generally untrue['] because 'animal waste doesn't simply decompose' and 'is generally not safe to compost at home.'" (Id. at 5.)

Here, the Court has already found that the FAC plausibly pleads facts supporting Plaintiffs' claim that the compostability of the Product, notwithstanding its industry certifications, is potentially deceptive in that there exist no appropriate facilities within the United States that will compost the Product and accompanying pet waste, and that the Product's home compostability disclaimers are contradictory. As to Defendant's argument that a reasonable consumer would understand that the word

"certified" was intended to qualify the Product's compostable nature, the Court is unconvinced. Plaintiffs have each pled that they relied upon the "Certified Compostable" claim in purchasing the Product and that in doing so they believed that they would be able to actually compost the Product. Plaintiffs paid a premium for the Product based upon this belief. Additionally, the Product's packaging makes no reference to industry standards, nor does the packaging refer consumers to Defendant's website for an explanation as to what the "certified" term is meant to convey. Even if the packaging had referred consumers to its website, the term "Certified Compostable" allegedly is stated throughout Defendant's website separately from the industry standards which are contained in FAQs that users have to actively seek out. Compare Mogull, 588 F. Supp. 3d at 454 (finding it plausible that a reasonable consumer "would not understand 'free-range eggs' to convey that [Defendant's] eggs meet the 'Certified Humane' standard" where "free-range" was "displayed as a standalone phrase throughout defendant's packaging, and only appear[ed] once directly adjacent to 'Certified Humane'"). Therefore, at this stage, the Court declines to determine whether a reasonable consumer could be misled by Defendant's Product advertising.

## 2. Plaintiffs' Breach of Express Warranty Claims

Under New York law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (quoting Avola v. La.-Pac. Corp., 991 F. Supp. 2d 381, 391 (E.D.N.Y.)). To plead a claim for breach of express warranty, a plaintiff must plausibly allege "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." Catalano v. MarineMax, 590 F. Supp. 3d 487, 501 (E.D.N.Y. 2022) (quoting Goldenmberg, 8 F. Supp. 3d at 482). "[W]here, as here, the alleged express warranty is based on product advertising or labelling, the representations made by the manufacturer are sufficient to form '[a]n express warranty . . . and privity is not required to sustain a cause of action.'" Mancuso v. RFA Brands, LLC, 454 F. Supp. 3d 197, 207 (W.D.N.Y. 2020) (quoting Perez v. B. Braun Med. Inc., No. 17-CV-8512, 2018 WL 2316334, at *5 (S.D.N.Y. 2018)); see also Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) ("New York has long since dispensed with the

privity requirement for express warranty claims." (citing <u>Randy Knitwear, Inc. v. Am. Cyanamid Co.</u>, 11 N.Y.2d 5, 13 (1962))).

Defendant argues that Plaintiffs have neither alleged "the existence of an express warranty from Earth Rated to Plaintiffs," nor alleged a breach.   (Support Memo at 19.) Defendant elaborates that the Product "is certified as having met specific ASTM and EN standards regarding compostability in industrial or municipal and home composts in accordance with the criteria set by ASTM and EN."   (<u>Id.</u>)   Defendant further argues that if dog waste can never be composted "the . . . FTC article cited by Plaintiffs would have said that claims about compostability of pet waste are 'always' untrue--not 'generally untrue.'"   (<u>Id.</u> at 20.)

Plaintiffs aver that Defendant offers no legal support for its claim that the "Certified Compostable" claim is not an express warranty.   (Opp'n at 18.)   Indeed, Plaintiffs argue that the "Certified Compostable" claim "was an express warranty that the Product was capable of being composted."   (<u>Id.</u>)   Plaintiffs highlight that the industry certifications of the Product are not represented anywhere on the Product's packaging, such that a reasonable consumer would understand the "Certified Compostable" claim to simply mean that the Product met certain standards.   (<u>Id.</u>) Plaintiffs maintain that the Product is incapable of being composted in a backyard compost due to the dangerous bacteria that

is released when dog waste decomposes. (Id.) Furthermore, Plaintiffs highlight that, on the issue of at-home composting, Defendant's disclaimers are contradictory. (Id.) Additionally, Plaintiffs have pled that there are currently no available industrial municipal facilities presently available in the United States that will compost the Product and accompanying waste. (Id.)

Here, whether Defendant created an express warranty that the Product was capable of being composted, or merely warranted that the Product met certain, specific, and articulated industry standards is a question of fact unsuited for determination on a motion to dismiss. See Paulino v. Conopco Inc., No. 14-CV-5145, 2015 WL 4895234, at *2 (E.D.N.Y. Aug. 17, 2015) ("What a reasonable consumer's interpretation of a seller's claim might be is generally an issue of fact which is not appropriate for decision on a motion to dismiss." (quoting Ault v. J.M. Smicker Co., No. 13-CV-3409, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014))); see also Goldemberg, 8 F. Supp. 3d at 483 (finding that because "the Court [was] unable to determine as a matter of law that the statements [at issue were] not misleading under GBL § 349," it was "equally inappropriate to determine they are not misleading for the warranty claim"). Likewise, the extent to which Defendant breached, or did not breach, any potential express warranty that the Product was actually compostable, is a question of fact. Thus, in the context of a Rule 12(b)(6) dismissal motion, Plaintiffs' allegations of

27

breach of express warranty are plausible, thereby surviving Defendant's challenge.

### 3. Plaintiffs' Magnuson-Moss Warranty Act Claims

"[T]he MMWA . . . 'incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages," Brady v. Basic Rsch., L.L.C., 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2015) (quoting Ebin v. Kangadis Food Inc., No. 13-CV-3311, 2013 WL 3936193, at *3 n.2 (S.D.N.Y. July 26, 2013)), such that "plaintiffs' breach of express warranty and MMWA claims stand or fall together." Id.

The parties agree that Plaintiffs' MMWA claims "rise and fall" with their state law claims. (See Support Memo at 21; Opp'n at 20-21.) Since the Court finds that Plaintiff's express warranty claim survives Defendant's motion to dismiss, Plaintiffs' MMWA claims must also survive. See Sitt v. Nature's Bounty, Inc., No. 15-CV-4199, 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016)).

### 4. The Court Need Not Reach the Merits of Defendant's Arguments Regarding Plaintiffs' Implied Warranty and Unjust Enrichment Claims

In their Opposition to Defendant's Motion, Plaintiffs have voluntarily dismissed their implied warranty claims, unjust enrichment claims, and any requests for injunctive relief, without prejudice. (See Opp'n at 25 n.7.) Since Plaintiff's withdrawal of these claims moots those respective branches of Defendant's

Motion, the Court declines to address Defendant's arguments on these points

    C. <u>Rule 9(b) Motion</u>

       1. <u>Plaintiffs' Fraud Claims Are Plausibly Pled</u>

To establish fraud under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, 797 F.3d 160, 170 (2d Cir. 2015) (quoting <u>Eurycleia Partners, LP v. Seward & Kissel, LLP</u>, 12 N.Y.3d 553, 559 (2009)). Additionally, Rule 9(b) requires claims of common law fraud to satisfy a heightened pleading standard. <u>See</u> FED. R. CIV. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." <u>Id.</u> Nevertheless, "courts 'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" <u>Duchimaza</u>, 619 F. Supp. 3d at 416 (quoting <u>Lerner</u>, 459 F.3d at 290). A "strong inference" may be established either "(a) by alleging facts to show that defendant[] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness."
Lerner, 459 F.3d at 290-91 (quoting Shields v. Citytr. Bancorp,
Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).  "To determine whether
the 'strong inference' requirement is met, a court should 'consider
the complaint in its entirety and take into account plausible
opposing inferences.'"  Duchimaza, 619 F. Supp. 3d at 416 (quoting
Loreley, 797 F.3d at 177).  If an inference is "cogent and at least
as compelling as any opposing inference one could draw from the
facts alleged," then it is sufficiently strong.  Loreley, 797 F.3d
at 177 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551
U.S. 308, 324 (2007)).  "At the pleadings stage, the alleged fraud
need only be plausible based on the complaint; it need not be more
likely than other possibilities."  Mogull, 588 F. Supp. 3d at 455
(quoting Loreley, 797 F.3d 160, 174 (2d Cir. 2015)).

        Defendant argues that the FAC fails to "plausibly
allege[] an actionable statement" sufficient to satisfy the
threshold element of a fraud claim.  (Support Memo at 23.)
Defendant relies primarily upon its argument that the Product is
"Certified Compostable" as advertised and is properly marketed in
compliance with the Green Guides.  (Id.)  Plaintiffs counter that
they have plausibly set forth the "who, what, when, where, and how
of the alleged fraud."  (Opp'n at 22.)  For example, Plaintiffs
assert that the FAC plausibly pleads that the material
misrepresentation at issue is the claim that the Product is

"Certified Compostable," notwithstanding the fact that pet waste is generally not safe to compost at home and there are currently no available facilities which will compost the Product and accompanying waste in the United States. (Id. at 22.) Plaintiffs maintain they pled that Defendant's website acknowledges there are presently no facilities in the United States capable of composting the Product, and that Defendant's disclaimers to the safety of composting the Product at home are contradictory. (Id.) Plaintiffs argue that it is inconsequential that the Product meets certain industry standards because a reasonable consumer would understand the "Certified Compostable" claim to mean that the Product is actually capable of being composted. (Id.) Plaintiffs elaborate that the misrepresentation appears prominently on the front of every Product package and that the statements are an example of "Greenwashing," that is designed to allow Defendant to charge a premium for what the public perceive to be an environmentally friendly product. (Id.)

The Court agrees with Plaintiffs that they have plausibly alleged the requisite "who, what, when, where, and how" of the alleged fraud, such that their fraud claims survive Defendant's motion. Plaintiffs have plausibly alleged that Defendant markets its product as "Certified Compostable" and that the extent to which the Product is actually suitable for backyard composting is questionable. Plaintiffs have also plausibly

31

alleged that there are no appropriate composting facilities in the United States presently available to compost the Product and accompanying waste.  Consequently, notwithstanding the Product's industry certifications, Plaintiffs have plausibly alleged that American consumers cannot actually compost the Product.  The FAC further highlights that Defendant's own website acknowledges the fact that industrial facilities are not presently available in the United States which constitutes strong circumstantial evidence of conscious misbehavior.  Notwithstanding Defendant's knowledge in this area, Defendant markets the Product as "Certified Compostable" and attempts to disclaim the lack of available industrial facilities by encouraging consumers to "check locally" because appropriate facilities "may not" be available.  Plaintiffs further allege that they each relied upon Defendant's "certified compostable" claims in purchasing the Product and that they paid a premium price for the compostable version of the Product. Drawing all reasonable inferences in Plaintiffs' favor, which the Court must do at this stage, the Court finds these allegations plausibly allege facts giving rise to a strong inference of fraudulent intent.  Similarly, the facts alleged in the FAC are sufficient to meet the heightened pleading standard of Rule 9(b).

2. <u>Plaintiffs Plead Plausible Claims for Negligent Misrepresentation</u>

Where a Plaintiff asserts "negligent misrepresentation claim[s] . . . based on the same set of facts as those upon which a fraud claim is grounded, Rule 9(b) applies to the negligent misrepresentation claim[s] as well." <u>Brumfield v. Merck & Co., Inc.</u>, No. 17-CV-6526, 2018 WL 2277835, at *3 (E.D.N.Y. May 18, 2018) (quoting <u>Eaves v. Designs for Fin., Inc.</u>, 785 F. Supp. 2d 229, 254-55 (S.D.N.Y. 2011) (collecting cases))). Under New York law, to assert a claim for negligent misrepresentation, a plaintiff must plead "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." <u>Hughes v. Ester C Co.</u>, 930 F. Supp. 2d 439, 474 (E.D.N.Y. 2013) (quoting <u>Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.</u>, 910 F. Supp. 2d 543, 546 (S.D.N.Y. 2012)); <u>see also</u> <u>Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.</u>, 404 F.3d 566, 583 (2d Cir. 2005) ("A negligent misrepresentation is actionable . . . where the defendant has been careless 'in imparting words upon which others were expected to rely and upon which they did or failed to act to their damage,' and where the author of the statement has 'some relationship or duty . . . to act with care' vis-à-vis the party at whom the statement is directed." (quoting <u>White v. Guarente</u>, 43

33

N.Y.2d 356, 401 (1977))).  Where the negligent misrepresentation
is made in connection with a commercial transaction "a plaintiff
must plead justifiable reliance." Hughes, 930 F. Supp. 2d at 474
(quoting Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co., 821
F. Supp. 2d 616, 623-24 (S.D.N.Y. 2011)).  In assessing justifiable
reliance, courts must consider three factors: (1) "whether the
person making the representation held or appeared to hold unique
or special expertise"; (2) "whether a special relationship of trust
or confidence existed between the parties"; and (3) "whether the
speaker was aware of the use to which the information would be put
and supplied it for that purpose." Landesbank Baden-Wurttemberg,
821 F. Supp. 2d at 624 (quoting Kimmell v. Schaefer, 89 N.Y.2d
257, 264 (1996)).  However, "not all representations made by a
seller of goods . . . will give rise to a duty to speak with care."
Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d
Cir. 2003) (quoting Kimmell, 89 N.Y.2d at 263).  "Instead, the law
of negligent misrepresentation requires a closer degree of trust
between the parties than that of the ordinary buyer and seller in
order to find reliance on such statements justified." Id.  Where
"a plaintiff fails to allege the existence of a special
relationship or the relationship is only 'sparsely pled,' the
plaintiff must 'emphatically allege' the other two factors
enunciated in Kimmell." Greene v. Gerber Prod. Co., 262 F. Supp.

34

3d 38, 75 (E.D.N.Y. 2017) (quoting Eternity Glob. Master Fund Ltd.
V. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 188 (2d Cir. 2004)).

Defendant argues that the FAC is "devoid of allegations
that would suggest there was any relationship between Plaintiffs
and Earth Rated other than buyer and seller." (Support Memo at
24.) Similarly, Defendant avers that the FAC makes no allegation
that Defendant "held itself out in the marketing of the Product as
having special expertise, nor are there any allegations regarding
a close degree of trust between the Plaintiffs and Earth Rated."
(Id.; see also Reply at 7-9.) Plaintiff counters that Defendant
"held or appeared to hold unique or special expertise because it
had superior knowledge of the characteristics of the Product, i.e.,
that the Product was not capable of being composted when used for
its intended purpose." (Opp'n at 23.) Plaintiffs highlight that
Defendant's "contention that the Product [met] certain industry
standards . . . support[s]" Plaintiffs' argument that Defendant
"had special expertise and knowledge." (Id. at 23-24.) They argue
that in placing its "Certified Compostable" representations
prominently on the front of the Product's packaging, "Defendant
knew that Plaintiffs would rely on its representations" in choosing
to purchase the product. (Id.)

Here, the Court agrees with Defendant in that the FAC
fails to allege a special relationship between Plaintiffs and Earth
Rated that goes beyond that of regular buyer and seller. However,

at this stage, Plaintiffs failure in this regard is not fatal to their claim, since the Court also finds that Plaintiffs have emphatically alleged that Defendant held itself out to have, or indeed held, unique or special expertise regarding the compostabilty of the Product. As Defendant aptly notes, the term certified is defined by the Oxford English Dictionary as "officially recognized as possessing certain qualifications or meeting certain standards." (Reply at 4.) The FAC alleges that Defendant's website states the "certified compostable bags are made from a blend of PBAT and vegetable starches and meets the ASTM D6400 and EN13432 Standards for compostability." (FAC ¶ 7.) The quoted language is visible to consumers that view the Product on Defendant's website.[6] By touting the Product as "certified" on the Product's packaging and expounding upon those certifications on its website, it is plausible that Defendant has held itself out as possessing "specific scientific information" related to the Product upon which consumers could rely. The industry certifications of compostable products; what those certifications mean in laymen's terms; and the limitations associated with those

---

[6] Consumers have to click on the "Read more+" prompt to learn that, "[m]unicipal composting facilities that accept pet waste do not exist in many communities so be sure to check locally." Notwithstanding this warning, and as discussed throughout this Memorandum & Order, this claim itself is arguably deceptive in that there are no municipal composting facilities that accept pet waste in the entirety of the United States.

certifications are not the sort of common knowledge topics that the average consumer would be expected to possess. Similarly, the average consumer is unlikely to possess knowledge that pet waste is generally unsafe to compost. Instead, and as Plaintiffs argue, regular consumers are likely to read that the Product is "Certified Compostable" and to understand that term as meaning the Product is, in fact, capable of being composted either at home or in an appropriate facility. Consequently, Plaintiffs have plausibly pled reasonable and justified reliance upon Defendant's representations. See Hughes, 930 F. Supp. 2d at 475 (finding the existence of a special relationship between the parties where defendants "held themselves out as holding a type of special expertise regarding the purported health benefits of Ester-C"); see also Rossi v. Gem Nation Corp., No. 21-CV-2197, 2021 WL 7906550, at *4 (E.D.N.Y. July 27, 2021) (inferring the existence of a special relationship based upon plaintiff's allegations that defendant possessed specialized knowledge which plaintiff, as a layperson, did not possess, and where defendant claimed "it relied on independent certifying agencies to ascertain the quality of its gemstones"); cf Dallas Aerospace, 352 F.3d at 788-89 (dismissing negligent misrepresentation claim because, inter alia, plaintiff was found to have held the relevant expertise with which to assess the alleged misrepresentation at issue such that plaintiff could not plead justifiable reliance); Eternity Glob., 375 F.3d at 189

37

(dismissing negligent misrepresentation claim because both the defendant and plaintiff possessed expertise in the same area and, consequently, plaintiff's reliance on defendant's representation was unjustified).

## CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED that** Defendant's Motion to Dismiss (ECF No. 21) is GRANTED IN PART AND DENIED IN PART to the extent that Plaintiffs' claims for Breach of Implied Warranty (Count IV), and Unjust Enrichment (Count VI) are DISMISSED WITHOUT PREJUDICE, but Plaintiffs' remaining claims survive said motion.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: July 28, 2023
       Central Islip, New York