# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGANNE NATALE and CHELSEA CHENG, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>9199-4467 QUEBEC INC., d/b/a EARTH RATED,<br><br>        Defendant. | Case No. 2:21-cv-6775-JS-SIL<br><br>Hon. Joanna Seybert |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated: March 14, 2024

**BURSOR & FISHER, P.A.**
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:   (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher*
Brittany S. Scott*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com
        bscott@bursor.com

*Pro Hac Vice*

*Proposed Class Counsel*

## **TABLE OF CONTENTS**

PAGE(S)

INTRODUCTION ...................................................................................................... 1

THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS................................. 2

TERMS OF THE SETTLEMENT ................................................................................... 3

I.      CLASS DEFINITION ...................................................................................... 3

II.     MONETARY RELIEF ...................................................................................... 3

III.    NON-MONETARY RELIEF ............................................................................. 4

IV.     RELEASE .................................................................................................... 4

V.      NOTICE AND OTHER ADMINISTRATIVE COSTS ............................................. 5

VI.     SERVICE AWARDS....................................................................................... 5

VII.    FEE AWARD ................................................................................................ 5

ARGUMENT .......................................................................................................... 5

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................ 5

        A.      The *Grinnell* Factors .......................................................................... 8

                1.      Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1).................................................................. 8

                2.      The Reaction Of The Class (*Grinnell* Factor 2)........................................ 9

                3.      Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) ............................. 9

                4.      Plaintiffs Would Face Real Risks If The Case Proceeded, And Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factors 4, 5, And 6) .............................. 10

                5.      Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7) ..................................................................... 11

                6.      The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)........................................................... 11

        B.      The Rule 23(e)(2) Factors .................................................................... 13

i

|  |  | 1. | The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)) | 13 |
|  |  | 2. | The Settlement Was Negotiated At Arm's Length (Rule 23(e)(2)(B)) | 14 |
|  |  | 3. | The Settlement Provides Adequate Relief To The Class (Rule 23(e)(2)(C)) | 14 |
|  |  | 4. | The Settlement Treats All Class Members Equally (Rule 23(e)(2)(D)) | 16 |

II. CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ............................................................................ 17

A. The Proposed Settlement Class Meets The Requirements Of Rule 23(a) ........................................................................ 18

    1. Numerosity ......................................................................... 18

    2. Commonality ...................................................................... 18

    3. Typicality ........................................................................... 19

    4. Adequacy ............................................................................ 19

B. The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3) ..................................................................... 20

    1. Predominance ..................................................................... 20

    2. Superiority .......................................................................... 21

III. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......... 22

IV. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ................................... 23

A. The Content Of The Proposed Class Notice Complies With Rule 23(c)(2) ....................................................................... 23

B. The Plan For Distribution Of The Class Notice Will Comply With Rule 23(c)(2) ............................................................... 24

CONCLUSION ........................................................................................... 24

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................... 21

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. Apr. 29, 2013).......................................... 9, 10

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) ............................................................. 21

*Buffington v. Progressive Advanced Ins. Co.*,
  342 F.R.D. 66 (S.D.N.Y. 2022) ......................................................... 19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ......................................................... Passim

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................................... 12

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008)....................................................... 20

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014)............................................. 18, 19, 20, 21

*Flores v. CGI Inc.*,
  2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022).................................. 10

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ................................................... 6, 13

*George v. Shamrock Saloon II, LLC*,
  2021 WL 3188314 (S.D.N.Y. July 28, 2021)..................................... 23

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)...................................... 11

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
  328 F.R.D. 35 (W.D.N.Y. 2018) ......................................................... 9

*Gordon v. Vanda Pharmaceuticals Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) .................................. 16

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017) ....................................................... 18, 21

*Hernandez v. Uzzal Pizzeria, Inc.*,
  2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022) .............................................................. 15

*Hill v. County of Montgomery*,
  2020 WL 5531542 (N.D.N.Y. Sept. 14, 2020) ........................................................... 21

*Holick v. Cellular Sales of New York, LLC*,
  2022 WL 3265133 (N.D.N.Y. July 25, 2022) .......................................................... 5, 6

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ........................................................... 13

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................. 14, 16

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020) ........................................................... 16

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ......................................................... 13, 15, 16, 17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ............................................................. 8

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ...................................................................... 18, 21

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  2008 WL 1956267 (S.D.N.Y. May 1, 2008) .............................................................. 22

*In re Warner Chilcott Ltd. Sec. Litig.*,
  2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................................................. 9

*Jara v. Felidia Restaurant, Inc.*,
  2018 WL 11225741 (S.D.N.Y. Aug. 20, 2018) ....................................................... 6, 24

*Jenkins v. National Grid USA Serv. Co.*,
  2022 WL 2301668 (E.D.N.Y. June 24, 2022) ............................................................ 15

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ................................................................................ 13

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) ........................................................................ 18

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
    333 F.R.D. 314 (S.D.N.Y. 2019) .................................................................. 7

*Lowe v. NBT Bank, N.A.*,
    2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022) .................................... Passim

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ............................................................... 11, 15

*McLaughlin v. IDT Energy*,
    2018 WL 3642627 (E.D.N.Y. July 30, 2018) ............................................ 8

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ........................................................ 17

*Montera v. Premier Nutrition Corp.*,
    621 F. Supp. 3d 1012 (N.D. Cal. 2022) .................................................... 12

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) .................................................................... 21

*Natale v. 9199-4467 Quebec Inc.*,
    2023 WL 4850531 (E.D.N.Y. July 28, 2023) ........................................... 19

*Pacheco ex rel. Ophthotech Corp. v. Guyer*,
    2022 WL 16647755 (S.D.N.Y. Nov. 2, 2022) ........................................... 6

*Patellos v. Hello Products, LLC*,
    2022 WL 2159566 (S.D.N.Y. June 15, 2022) ..................................... 15, 16

*Patti's Pitas, LLC v. Wells Fargo Merchant Servs., LLC*,
    2021 WL 9564432 (E.D.N.Y. Feb. 8, 2021) ............................................ 15

*Pearlstein v. BlackBerry Ltd.*,
    2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ................................. 8, 9, 10

*Peoples v. Annucci*,
    180 F. Supp. 3d 294 (S.D.N.Y. 2016) ........................................................ 6

*Philemon v. Aries Capital Partners, Inc.*,
    2019 WL 13224983 (E.D.N.Y. July 1, 2019) ................................. 11, 20, 21

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ........................................................................ 21

*TBK Partners, Ltd. v. Western Union Corp.*,
  517 F. Supp. 380 (S.D.N.Y. 1981) ............................................................... 8

*Trinidad v. Pret a Manger (UDS) Ltd.*,
  2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014) ............................................ 15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................ 6, 7

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008) ........................................................... 7

## STATUTES

28 U.S.C. § 1715 ................................................................................................. 24

## RULES

Fed. R. Civ. P. 23(a) ................................................................................. Passim

## OTHER AUTHORITIES

Newberg on Class Actions (4th ed. 2002) .......................................................... 6

Plaintiffs Meganne Natale and Chelsea Cheng ("Plaintiffs"), by and through Class Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. The Settlement Agreement ("Settlement") and its exhibits are attached as Exhibit 1 to the Declaration of Max S. Roberts ("Roberts Decl.").

## INTRODUCTION

Over two years ago, Plaintiffs filed a putative class action against Defendant 9199-4467 Quebec Inc., d/b/a Earth Rated ("Defendant" or "Earth Rated"), alleging that Defendant misrepresented its Earth Rated Certified Compostable Poop Bags (the "Certified Compostable Poop Bags") as being "Certified Compostable." First Amended Complaint (ECF No. 20) (the "FAC") ¶¶ 5-9. Now, after the exchange of informal discovery, resolution of Defendant's Motion to Dismiss the First Amended Complaint, and months of settlement negotiations, the Parties have reached a proposed Settlement that will bring this long-running litigation to a close and provide significant, immediate relief to Settlement Class Members.[2]

Plaintiffs allege that, in fact, the Certified Compostable Poop Bags were *not* compostable because "dog waste cannot be composted because it can contain harmful contaminants (*e.g.*, *E. Coli*)" and "industrial composting of dog waste is not available in the United States." FAC ¶¶ 12, 14 (cleaned up). Plaintiffs further allege that Defendant charged a price premium based on this misrepresentation, and Plaintiffs and other proposed class members would not have paid as much for the Certified Compostable Poop Bags but for Defendant's misrepresentation. *See*, *e.g.*, *id.* ¶¶ 34-36. Since the filing of this lawsuit, Defendant discontinued its Certified Compostable Poop Bags in the U.S. and thus no longer sells them in the U.S. *See* Terms Of The Settlement § III,

---

[1] All capitalized terms not otherwise defined herein have the same definitions as set out in the settlement agreement. *See* Roberts Decl. Ex. 1.

[2] Defendant denies liability or any wrongdoing.

*infra*.  Thus, the only outstanding question is how much class members are owed for Defendant's allegedly misleading conduct.

The Settlement answers that question with substantial relief.  Specifically, the Settlement establishes an $825,000 non-reversionary common fund, from which Settlement Class Members with Proof of Purchase can receive $2.00 for each Certified Compostable Poop Bag they have proof for purchasing, and Settlement Class Members without Proof of Purchase can receive $2.00 for up to three (3) Certified Compostable Poop Bags they purchased.  This relief represents at least a third of what Plaintiffs and Settlement Class Members could have recovered had the case gone to trial—which is more than reasonable, if not exceptional, under Second Circuit precedent—but obviates the substantial risk of non-payment associated with extensive litigation.

Accordingly, and for the reasons detailed below, the Court should grant Plaintiffs' Unopposed Motion for Preliminary Approval, enter the Proposed Preliminary Approval Order, and distribute notice to the Settlement Class.

## THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS

On December 7, 2021, Plaintiffs filed a putative class action against Defendant, alleging that Defendant misrepresented the Certified Compostable Poop Bags as "Certified Compostable" and that Plaintiffs and putative class members sustained financial injury as a result of Defendant's misrepresentations (ECF No. 1).  On May 6, 2022, Plaintiffs filed the FAC (ECF No. 20).

On June 6, 2022, Defendant filed a Motion to Dismiss the FAC (ECF No. 21).  Briefing on this motion was completed on July 21, 2022 (ECF Nos. 25, 26).  On July 28, 2023, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the FAC (ECF No. 28).  Defendant filed its Answer on August 25, 2023 (ECF No. 29), and the Court set a discovery conference for September 18, 2022 (ECF No. 58).

On September 11, 2023, the Parties filed a Joint Motion to Stay the Action so the Parties could attempt to negotiate a settlement (ECF No. 31).  On September 12, 2023, the Court granted the motion.  Over the next several months, the Parties engaged in arm's-length negotiations regarding a potential class settlement of the Action.  Roberts Decl. ¶¶ 4, 7.  These negotiations involved the exchange of informal discovery, which was largely the same information that would have been produced had the case proceeded to formal discovery.  *Id.* ¶¶ 5-6.  Accordingly, the Parties were sufficiently informed of the strengths and weaknesses of their respective positions, the approximate size of the putative class, and the potential damages at issue to negotiate a reasonable settlement.  *Id.* ¶¶ 5, 8.

Finally, on January 31, 2024, the Parties executed a term sheet memorializing the material terms of a nationwide class settlement.  *Id.* ¶ 7.  The Parties then executed the Settlement itself on March 13, 2024.  *Id*.

## TERMS OF THE SETTLEMENT

### I.    CLASS DEFINITION

The "Settlement Class" or "Settlement Class Members" are defined as "all persons in the United States who purchased one or more units of Earth Rated Certified Compostable Poop Bags (the "Certified Compostable Poop Bags") during the class period which extends from October 28, 2015 through the date of class notice (the "Class Period"), excluding persons who purchased for the purpose of resale or for purposes other than personal use."  Settlement ¶ 1.28.

### II.    MONETARY RELIEF

Pursuant to the Settlement, Defendant will establish a $825,000 non-reversionary common fund for the payment for (i) Approved Claims; (ii) Notice and Other Administrative Costs actually incurred by the Settlement Administrator; (iii) any Fee Award to Class Counsel; and (iv) any

Service Award to Plaintiffs.  Settlement ¶ 2.1(a).  Each Settlement Class Member with proof of purchase may submit a claim for a refund of $2.00 for each Certified Compostable Poop Bag purchased during the Class Period.  *Id.* ¶ 2.3(a).  Each Settlement Class Member with no proof of purchase may submit a claim for a refund of $2.00, for each Certified Compostable Poop Bag purchased during the Class Period, for up to three (3) Certified Compostable Poop Bags.  *Id*.

In the event that the Approved Claims exceed the available Settlement Fund after reduction for notice and administration expenses, Service Awards, and attorneys' fees, costs, and expenses, the Settlement Class Member payments shall be reduced *pro rata*.  *Id.* ¶ 2.3(d).  In the event that funds remain in the Settlement Fund, the Parties will meet and confer regarding whether said remaining funds should be distributed to Settlement Class Members on a *pro rata* basis, and/or whether the funds should be distributed to an appropriate *cy pres* recipient.  *Id*.   If the parties cannot agree, the Court shall make the decision following an opportunity for the Parties to submit their separate proposals for the Court's consideration.  *Id.*

## III.    NON-MONETARY RELIEF

While the Settlement does not explicitly provide for injunctive relief, in 2023, Defendant discontinued the subject product and thus no longer sells the Certified Compostable Poop Bags in the U.S.

## IV.    RELEASE

In exchange for the relief described above, Defendant, each of its related affiliated entities, as well as all "Released Parties" as defined in Settlement ¶ 1.24, will receive a full release of all claims that in any way relate to the compostability of the Certified Compostable Poop Bags in the U.S. during the Class Period.  *See* Settlement ¶¶ 1.23-1.25, 6.1 (full releasing language).  The Release does not include claims for personal injuries.  *Id.* ¶ 1.24.

## V.    NOTICE AND OTHER ADMINISTRATIVE COSTS

All Notice and Other Administrative Costs shall be paid out of the Settlement Fund, and cover "all costs and expenses actually incurred by the Settlement Administrator in the publication of Class Notice, establishment of the Settlement Website, the processing, handling, reviewing, and paying of valid claims made by Claimants, and paying taxes and tax expenses related to the Settlement Fund."  Settlement ¶ 1.17.

## VI.    SERVICE AWARDS

In recognition for their efforts on behalf of the Class, Defendant has agreed that Plaintiffs may receive, subject to Court approval, incentive awards of $5,000 each as appropriate compensation for their time and effort serving as Class Representatives and as parties to the Action. Settlement ¶ 3.3.  Any Service Awards shall be out of the Settlement Fund.  *Id.* ¶ 1.30.

## VII.    FEE AWARD

Subject to approval by the Court, Class Counsel will petition the Court for an award of attorneys' fees, costs, and expenses of no more than one-third (1/3) of the Settlement Fund ($275,000).  Settlement ¶ 3.1.  Defendant reserves the right to oppose Plaintiffs' motion or request for an award of attorneys' fees and/or costs on any ground available to Defendant.  *Id.*  Any Fee Award shall be paid out of the Settlement Fund.  *Id.* ¶ 1.30

## <u>ARGUMENT</u>

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"Preliminary approval is the first step in the settlement process. It allows notice to be provided and affords interested parties the opportunity to comment on or object to the settlement." *Holick v. Cellular Sales of New York, LLC*, 2022 WL 3265133, at *2 (N.D.N.Y. July 25, 2022) (cleaned up).  "Following notice, the Court can hold a hearing, receive input on the proposed

settlement, and make a final judgment as to the propriety and fairness of the settlement." *Id.* (cleaned up).

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "Courts have discretion regarding the approval of a proposed class action settlement." *Jara v. Felidia Restaurant, Inc.*, 2018 WL 11225741, at *1 (S.D.N.Y. Aug. 20, 2018). "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Id.* "Due to the presumption in favor of settlement, absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (cleaned up).

"Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Holick*, 2022 WL 3265133, at *2. "To grant preliminary approval, a court need only find probable cause to submit the settlement proposal to class members." *Pacheco ex rel. Ophthotech Corp. v. Guyer*, 2022 WL 16647755, at *1 (S.D.N.Y. Nov. 2, 2022) (cleaned up). "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members. NEWBERG § 11.25. "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y.

2005).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same).

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.

Courts should also consider the "four enumerated factors in . . . Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019).  The Rule 23(e) factors are whether:  (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  "There is significant overlap between

the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("*In re Payment Card II*").

### A. The *Grinnell* Factors

> #### 1. Litigation Through Trial Would Be Complex, Costly, And Long (Grinnell Factor 1)

"[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022). As such, courts have consistently held that unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

As discussed above, Plaintiffs largely prevailed on Defendant's Motion to Dismiss, and the Parties have engaged in informal discovery that involved largely the same information that would have been produced in formal discovery. Roberts Decl. ¶¶ 5-6. The next steps in the litigation would presumably have been depositions of the Parties, substantial discovery of electronically stored information, and contested motions for summary judgment and class certification, which would be costly and time-consuming for the Parties and the Court and create a risk that a litigation class would not be certified and/or that the Class would recover nothing at all. *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *10 (E.D.N.Y. July 30, 2018) (finding the first *Grinnell* factor weighed in favor of settlement approval where "the parties would likely need to brief motions for class certification, summary judgment, and potentially proceed to trial"). Thus, while Plaintiffs are confident in the merits of this case, there is no guarantee that they will safely land the proverbial

plane. Moreover, "[e]ven assuming that plaintiffs were successful in defeating any pretrial motions filed by defendants, and were able to establish defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay." *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 55 (W.D.N.Y. 2018) (internal quotations omitted).

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. It creates a $825,000 non-reversionary common fund to pay for Approved Claims by Settlement Class Members. Settlement ¶ 1.30. This *Grinnell* factor weighs in favor of preliminary approval.

### 2. The Reaction Of The Class (Grinnell Factor 2)

Because "no notice has been sent, consideration of this factor is premature." *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008). Plaintiffs are unaware of any particular opposition to the Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (Grinnell Factor 3)

"This factor asks[] whether … counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendant[], and the value of Plaintiffs' causes of action for purposes of settlement." *Pearlstein*, 2022 WL 4554858, at *4 (cleaned up). As discussed above, Plaintiffs largely defeated Defendant's Motion to Dismiss, and the Parties conducted informal discovery that involved the same information that would have been produced in formal discovery related to issues of class certification and summary judgment. Roberts Decl. ¶¶ 5-6. Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides, confirms that "Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 at 475 (S.D.N.Y. Apr. 29, 2013).

   4. *Plaintiffs Would Face Real Risks If The Case Proceeded,*
    *And Establishing A Class And Maintaining It Through Trial*
    *Would Not Be Simple (Grinnell Factors 4, 5, And 6)*

"Courts generally consider the fourth, fifth, and sixth Grinnell factors together." *Pearlstein*, 2022 WL 4554858, at *5 (internal quotations omitted). In weighing the risks of certifying a class and establishing liability and damages, "the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to foresee with absolute certainty the outcome of the case." *Lowe v. NBT Bank, N.A.*, 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30, 2022) (cleaned up). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Flores v. CGI Inc.*, 2022 WL 13804077, at *7 (S.D.N.Y. Oct. 21, 2022) (internal quotations omitted).

"Here, while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against [Defendant], they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal." *Lowe*, 2022 WL 4621433, at *8. In particular, Plaintiffs would face "[t]he risk of obtaining … class certification and maintaining [it] through trial," which "would likely require extensive discovery and briefing." *Beckman*, 293 F.R.D. at 475. And "[e]ven assuming that the Court granted certification, there is always the risk of decertification after the close of discovery." *Lowe*, 2022 WL 4621433, at *8; *see also Flores*, 2022 WL 13804077, at *8 ("The risks attendant to certifying a class and defending any decertification motion supports approval of the settlement."). Approval of the Settlement obviates the "[r]isk, expense, and delay" of further litigation, and these *Grinnell* factors thus support preliminary approval. *Lowe*, 2022 WL 4621433, at *8.

10

    5.  *Defendant's Ability To Withstand A Greater Judgment (Grinnell Factor 7)*

  While Defendant could likely withstand a greater judgment, "this factor standing alone does not mean that the settlement is unfair." *Philemon v. Aries Capital Partners, Inc.*, 2019 WL 13224983, at *12 (E.D.N.Y. July 1, 2019).

    6.  *The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Grinnell Factors 8 And 9)*

  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Philemon*, 2019 WL 13224983, at *12. Instead, "[w]hen the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable." *Id.* Moreover, when a settlement assures immediate payment of substantial amounts to class members and does not "sacrific[e] speculative payment of a hypothetically larger amount years down the road," the settlement is reasonable. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (cleaned up).

  In the Second Circuit, courts are required to calculate the value of a Settlement in terms of the amount of relief *made available* to Class Members, as opposed to the amount that may actually be claimed. *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.").

  Here, Defendant sold at least 549,000 Certified Compostable Poop Bags during the statute of limitations period, and Plaintiffs estimated that the price premium attributable to the "Certified Compostable" representation was approximately 9 cents per bag of the Certified Compostable

Poop Bag.[3]  Roberts Decl. ¶ 9; *see also* FAC ¶ 35.  So, if a consumer paid $9.00 for the 60-count version of the Certified Compostable Poop Bags, he or she would have only paid $3.60 but for Defendant's misrepresentation—a difference of $5.40.  Roberts Decl. ¶ 9.  And, if each of the Certified Compostable Poop Bags was the 60-count variant—which was the most popular variant of the Certified Compostable Poop Bag—then Defendant would have made approximately $4.941 million from its sale of the Certified Compostable Poop Bags when it would have made approximately $1.976 million had it truthfully represented the features of the Certified Compostable Poop Bag.  *Id.* ¶ 10.  Thus, the Settlement Class's actual damages in this matter, had this case proceeded to trial, are $2.965 million as to the entire Settlement Class.  *Id.*[4]

With that in mind, the Settlement provides more than reasonable value.  Class Counsel's efforts have led to the creation of a non-reversionary $825,000 common fund from which Settlement Class Members can recoup $2.00 per Certified Compostable Poop Bag.  Settlement ¶¶ 1.30, 2.3(a).  Thus, the Settlement Fund represents approximately a 27.82% recovery of the Settlement Class's maximum actual damages in this matter, and the $2.00 award per Certified Compostable Poop Bag represents a 37.04% recovery of each individual Settlement Class Member's actual damages.  Roberts Decl. ¶ 11.  Both amounts are more than reasonable.  *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014) (approving settlement that "represent[ed] a recovery in the range of approximately 9.2% to 21% of estimated

---

[3] While Defendant does not oppose this motion for preliminary approval of classwide settlement, Defendant does not endorse Plaintiffs' valuations or damages calculations herein and reserves the right to submit its own should the need arise.

[4] Plaintiffs and the New York Subclass have also asked for an award of statutory damages under GBL §§ 340-350.  While Plaintiffs believe they are entitled to full statutory damages under these statutes ($550), it is unclear whether full statutory damages would be awarded after trial.  *See Montera v. Premier Nutrition Corp.*, 621 F. Supp. 3d 1012, 1021 (N.D. Cal. 2022) (awarding $50 in statutory damages under GBL § 349 but finding $500 in statutory damages under GBL § 350 violates the Due Process Clause).  Thus, Plaintiffs have not included statutory damages in their calculation of the Settlement's value versus their potential recovery at trial.

damages"); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *12 (E.D.N.Y. Sept. 18, 2007) (approving $20 million settlement representing 10% of maximum damages).

Compounding this, Defendant was likely to argue that Settlement Class Members could only recover for one Certified Compostable Poop Bag because Settlement Class Members would have known after trying to compost one Certified Compostable Poop Bag that it was not compostable and were thus not deceived by representations on the packaging of subsequent purchases. If the Court agreed with this argument, then Settlement Class Members would have been foreclosed from recovering damages for each of their purchases—something the Settlement provides for here. Thus, these *Grinnell* factors also weigh in favor of preliminary and final approval.

*     *     *

In sum, all of the *Grinnell* factors weigh in favor of approval or are neutral at worst. Thus, the Settlement on its face is "'fair, adequate, and reasonable, and not a product of collusion.'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).

**B.    The Rule 23(e)(2) Factors**

*1.    The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))*

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) ("*In re Payment Card I*") (internal quotations omitted). Here, "plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries": they purchased the Certified Compostable Poop Bags in reliance on Defendant's representation that the Certified Compostable Poop Bags were

"Certified Compostable." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). "Because of these injuries, plaintiffs have an interest in vigorously pursuing the claims of the class." *Id.* (internal quotations omitted). Further, courts have previously found that Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel. Roberts Decl. Ex. 2 (Firm Resume). Thus, this factor is met.

> 2.    *The Settlement Was Negotiated At Arm's Length (Rule 23(e)(2)(B))*

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (internal quotations omitted). Here, both counsel for Plaintiffs and for Defendant are experienced in class action litigation and negotiated the Settlement over several months of arm's-length negotiations. Roberts Decl. ¶¶ 4, 7. Accordingly, this factor is met.

> 3.    *The Settlement Provides Adequate Relief To The Class (Rule 23(e)(2)(C))*

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv).

***"The costs, risks, and delay of trial and appeal."*** This factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining

the class through the trial. *In re Payment Card I*, 330 F.R.D. at 36. As noted above, the Settlement has met each of these *Grinnell* factors. Argument §§ I.A.1, I.A.4, I.A.6, *supra*.

**"The effectiveness of any proposed method of distributing relief to the class."** Settlement Class Members need only submit a simple claim form to receive monetary relief. This is a reasonable method of distributing relief. *See*, *e.g.*, *Patellos v. Hello Products, LLC*, 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (holding "the relief provided to the Settlement Class is adequate taking into account, *inter alia* … the proposed method of distributing payments to the Settlement Class" where class members were required to submit a claim form to receive monetary relief); *Jenkins v. National Grid USA Serv. Co.*, 2022 WL 2301668, at *3 (E.D.N.Y. June 24, 2022) (same); *Patti's Pitas, LLC v. Wells Fargo Merchant Servs., LLC*, 2021 WL 9564432, at *1 (E.D.N.Y. Feb. 8, 2021) (same where "all Former Customers eligible to receive a payment [could] fil[e] a simple claim form").

**"The terms of any proposed award of attorneys' fees."** In the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class." *Masters*, 473 F.3d at 437. Here, Class Counsel has agreed petition the Court for two-hundred seventy-five thousand dollars ($275,000) in fees and expenses. This is one-third of the $825,000 in monetary relief that Class Counsel has made available, which is reasonable under this Circuit. *Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1 (S.D.N.Y. Apr. 6, 2022) (same).

*"Any agreement required to be identified by Rule 23(e)(3)."* This factor requires identification of "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696. No such agreement exists other than the Settlement.

4.    *The Settlement Treats All Class Members Equally (Rule 23(e)(2)(D))*

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47. Here, although Settlement Class Members with Proof of Purchase will be eligible to receive compensation for as many Certified Compostable Poop Bags as they have proof for purchasing—as opposed to being limited to three bags—that does not mean Settlement Class Members are treated inequitably. *Patellos*, 2022 WL 2159566, at *1 (finding "the Settlement Agreement treats the Settlement Class Members equitably relative to one another" where class members with proof of purchase could make claims for up to ten products, versus up to five products without proof of purchase); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 7389330, at *3 (S.D.N.Y. Dec. 16, 2020) ("[T]he agreement appears to treat class members roughly equally. The agreement sets forth a formula to determine the value of a class member's claim that depends on 1) the product purchase price in the jurisdiction where the member bought the product, and 2) the quality of proof of purchase presented by the class member.").

Further, all Settlement Class Members' claims are subject to a downward *pro rata* adjustment if they exceed the available Settlement Fund. A *pro rata* distribution has been found by courts in this Circuit to be equitable. *Gordon v. Vanda Pharmaceuticals Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (finding class members were treated equally where "all

class members will be subject to the same formula for the distribution of the fund") (cleaned up); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the class members equitably … and has the benefit of simplicity").

*    *    *

In sum, as with the *Grinnell* factors, all of the Rule 23(e)(2) factors in favor of approval. Thus, the Court should grant preliminary (and final) approval of the Settlement.

## II. CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Payment Card I*, 330 F.R.D. at 50. Under Fed. R. Civ. P. 23(a), a class action may be maintained if all of the prongs of Fed. R. Civ. P. 23(a) are met, as well as one of the prongs of Fed. R. Civ. P. 23(b). Fed. R. Civ. P. 23(a) requires that:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As relevant here, Fed. R. Civ. P. 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

17

A.    **The Proposed Settlement Class Meets The Requirements Of Rule 23(a)**

1.    *Numerosity*

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the Settlement Class includes at least 549,000 Certified Compostable Poop Bags.  Roberts Decl. ¶ 9.  Numerosity is therefore met.  *Lowe*, 2022 WL 4621433, at *4 ("Numerosity is presumed at a level of 40 members.") (cleaned up).

2.    *Commonality*

Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).  "Although the claims need not be identical, they must share common questions of fact or law."  *Lowe*, 2022 WL 4621433, at *4.  Instead, "Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (cleaned up). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  *Id.* (cleaned up)

Here, "the putative class members relied on the same alleged misrepresentations of fact regarding" the compostability of the Certified Compostable Poop Bags" and suffered the same economic harm: the price premium paid as a result of that misrepresentation.  *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017).  Accordingly, commonality is met.  *See also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) ("A common question … is whether the 50% thicker claim is false and/or misleading.  The answer to this question is common to all class members, and is apt to drive the resolution of this litigation."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) ("The common questions in this case are whether the pomace

packed into Capatriti tins was '100% Pure Olive Oil,' whether Gourmet Factory negligently misrepresented that Capatriti was '100% Pure Olive Oil,' and whether Gourmet Factory defrauded purchasers by labeling Capatriti as '100% Pure Olive Oil.'").

### 3.    *Typicality*

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Minor variations in the fact patterns underlying individual claims do not preclude a finding of typicality when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 72 (S.D.N.Y. 2022) (cleaned up).

Here, "[P]laintiffs' and other class members' claims ar[o]se out of the same course of conduct by the [D]efendant and [were] based on the same legal theories": Defendant's representation that the Certified Compostable Poop Bags were "Certified Compostable." *Ebin*, 297 F.R.D. at 565-66 (typicality satisfied where "[e]very tin was labeled" with the same alleged misrepresentation); *see also* FAC ¶¶ 5-9, 38-39.  Accordingly, typicality is satisfied.[5]

### 4.    *Adequacy*

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Lowe*, 2022 WL 4621433, at *5 (internal quotations omitted).  Here, Plaintiffs—like each and every one of the Settlement Class

---

[5] In its Motion to Dismiss the FAC, Defendant argued that it "ha[d] no record" of Plaintiff Cheng "purchasing the [Earth Rated] Product via Amazon.com as alleged." *Natale v. 9199-4467 Quebec Inc.*, 2023 WL 4850531, at *4 (E.D.N.Y. July 28, 2023) (Seybert, J.).  As part of the informal discovery in this matter, Plaintiff Cheng provided Defendant's Counsel with her purchase receipt from Amazon.com. Roberts Decl. ¶ 6.  The receipt showed Plaintiff Cheng purchased the Certified Compostable Poop Bag from a pet store selling the Certified Compostable Poop Bag on Amazon.com, as opposed to from Defendant's Amazon.com distribution. *Id*.  Accordingly, there is now no dispute Plaintiff Cheng purchased the Certified Compostable Poop Bag.

Members—purchased a Certified Compostable Poop Bag that contained the "Certified Compostable" misrepresentation. FAC ¶¶ 38-39. "The fact that [P]laintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

Likewise, proposed Class Counsel is more than qualified to represent the Settlement Class. "Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008." *Ebin*, 297 F.R.D. at 566; *see also* Roberts Decl. Ex. 2 (Firm Resume of Bursor & Fisher, P.A.). Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, aggressively pursuing those claims, defeating a motion to dismiss, conducting informal discovery, and ultimately, negotiating a favorable class action settlement. Roberts Decl. ¶¶ 4-7, 12. In sum, proposed Class Counsel has vigorously prosecuted this action and will continue to do so throughout its pendency. *Id.*

### B.  The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both predominance and superiority are met here.

### 1.  Predominance

"Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class." *Philemon*, 2019 WL 13224983, at

*9. "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal quotations omitted). "Satisfaction of Rule 23(a) [as Plaintiffs have done here] goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Lowe*, 2022 WL 4621433, at *6 (cleaned up).

Courts have found that predominance is satisfied in false advertising cases like this one, particularly when brought pursuant to GBL §§ 349-350. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 (finding predominance met as to GBL §§ 349-350 claims); *Ebin*, 297 F.R.D. at 569 (finding predominance met as to fraud claim and noting "[t]he Second Circuit has held that the predominance requirement is met for claims sounding in fraud that are based on uniform representations made to all members of the class.") (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)); *Hart*, 2017 WL 2912519, at *8-9 (same).

### 2.    Superiority

Under Rule 23(b)(3)'s superiority requirement, Plaintiffs must demonstrate that a "class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Philemon*, 2019 WL 13224983, at *9 (citing *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)). Fed. R. Civ. P. 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.[6]

---

[6] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem Prods., Inc. v. Windsor*, 521

Here, "a class action is far superior to requiring the claims to be tried individually given the relatively small awards that each Settlement Class [M]ember is otherwise entitled." *Lowe*, 2022 WL 4621433, at *6.  Further, "litigating this matter as a class action will conserve judicial resources and is more efficient for the Settlement Class [M]embers, particularly those who lack the resources to bring their claims individually." *Id*.  Thus, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the Class's claims, while "the individual damages may be too small to make litigation worthwhile." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *14 (S.D.N.Y. May 1, 2008).

## III.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court considers proposed Class Counsel's: (i) work in identifying or investigating the potential claim, (ii) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (iii) knowledge of the applicable law, and (iv) resources that it will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer class actions and those involving product defects.  Roberts Decl. Ex. 2 (Firm Resume of Bursor & Fisher, P.A.).  And, as a result of their zealous efforts in this case, proposed Class Counsel has secured substantial monetary relief for the Class Members.  Thus, the Court should appoint Bursor & Fisher, P.A. as Class Counsel.

---

U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Hill v. County of Montgomery*, 2020 WL 5531542, at *4 (N.D.N.Y. Sept. 14, 2020) ("Whether the case would be manageable as a class action at trial is not of consequence here in the context of a proposed settlement.").

## IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.    The Content Of The Proposed Class Notice Complies With Rule 23(c)(2)

For notice to be satisfactory, the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Class notice need only describe the terms of the settlement generally, which is a minimal requirement." *George v. Shamrock Saloon II, LLC*, 2021 WL 3188314, at *7 (S.D.N.Y. July 28, 2021) (cleaned up).

Here, the Notice provides detailed information about the Settlement, including: (i) a comprehensive summary of its terms; (ii) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and service awards for the Class Representatives; and (iii) detailed information about the Released Claims. Settlement Exhibits A-C. In addition, the Notice provides information about the Final Approval Hearing date, the right of Settlement Class Members to seek exclusion from the Settlement Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information. *Id.*

In short, the Notice fully informs Settlement Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights. This information is adequate to put Settlement Class Members on notice of the proposed Settlement and is well within the requirements of Fed. R. Civ. P. 23(c)(2)(B). *George*, 2021 WL 3188314, at *7 (approving substantially similar notice form and collecting cases that have done the same);

*Jara*, 2018 WL 11225741, at *4 ("The Proposed Notice is also appropriate because it describes the terms of the settlement, informs the classes about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.").

**B.    The Plan For Distribution Of The Class Notice Will Comply With Rule 23(c)(2)**

The Parties have agreed upon a notice plan that easily satisfies the requirements of both Fed. R. Civ. P. 23 and Due Process.  Upon Preliminary Approval of the Settlement, the Settlement Administrator will send direct notice to all Settlement Class Members by e-mail for whom the Parties and Settlement Administrator have such information.  Settlement ¶¶ 4.2(a)-(b).  In addition, the Settlement Administrator will establish a Settlement Website that shall contain all salient Settlement documents, as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online.  *Id.* ¶ 4.2(c).  Further, the Settlement Administrator will provide notice via internet banner advertisements and/or social media.  *Id.* ¶ 4.2(d).  Finally, the Settlement Administrator will provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  *Id.* ¶ 4.2(e).  In sum, the proposed methods for providing notice to the Class comports with both Fed. R. Civ. P. 23 and Due Process, and thus, should be approved by the Court.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Preliminary Approval of the Settlement.  A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the notice plan, and is submitted herewith.

Dated: March 14, 2024                    Respectfully submitted,

                                         **BURSOR & FISHER, P.A.**

                                         By: */s/ Max S. Roberts*
                                                 Max S. Roberts

                                         Max S. Roberts
                                         1330 Avenue of the Americas, 32nd Floor
                                         New York, NY 10019
                                         Telephone:  (646) 837-7150
                                         Facsimile:   (212) 989-9163
                                         Email: mroberts@bursor.com

                                         **BURSOR & FISHER, P.A.**
                                         L. Timothy Fisher*
                                         Brittany S. Scott*
                                         1990 North California Blvd., Suite 940
                                         Walnut Creek, CA 94596
                                         Telephone: (925) 300-4455
                                         Facsimile:  (925) 407-2700
                                         Email: ltfisher@bursor.com
                                                 bscott@bursor.com

                                         *Pro Hac Vice*

                                         *Proposed Class Counsel*